The PEOPLE of the State of
Colorado, Petitioner,

v.

John Harvey GASKINS, Respondent.

No. 90SC437.

Supreme Court of Colorado,
En Banc.

Jan. 13, 1992.
Rehearing Denied Feb. 3, 1992.

Gale A. Norton, Atty. Gen., Raymond T.
Slaughter, Chief Deputy Atty. Gen., Timo-

thy M. Tymkovich, Sol. Gen., Robert Mark Russel, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, Colo. State Public Defender, Frances Smylie Brown, Chief Appellate Deputy, Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

We granted the People's petition for certiorari to determine whether the Colorado Court of Appeals correctly concluded that the defendant, John Harvey Gaskins, was entitled to a proportionality review of a life sentence imposed pursuant to the habitual criminal statute, section 16–13–101, 8A C.R.S. (1986), and, if so, whether the court abused its discretion in remanding the case to the trial court to conduct the review. We hold that a proportionality review of a life sentence imposed under the Colorado habitual criminal statute is required by the cruel and unusual punishments clauses of the United States and Colorado Constitutions.[1] In addition, we conclude that the court of appeals acted within its discretion in vacating Gaskins' sentence and remanding the case to the trial court with directions to resentence after conducting a proportionality review. Accordingly, we affirm the judgment of the Colorado Court of Appeals.

### I.

We derive the following description of relevant events from the evidence adduced at a trial before a jury. On June 28, 1987, shortly after midnight, Gaskins and a companion were observed attempting to remove a candy vending machine from the lobby of the Viscount Hotel in Denver. A hotel employee questioned the men, and they responded that the machine was being removed for repairs. At the employee's request, Gaskins went with him to the front desk but was unable to produce identification. Gaskins then accompanied the employee outside, where they unsuccessfully sought to locate Gaskins' companion. Gaskins then assaulted the employee with a rock, breaking his nose. A scuffle ensued, during which Gaskins bit the employee on the arm. Gaskins was eventually restrained by two other hotel employees, and the vending machine was later recovered outside the hotel. Gaskins was brought to trial in Denver District Court and convicted of third-degree assault[2] and criminal attempt to commit theft.[3] He was also adjudged to be a habitual criminal based on the jury's determination that he had sustained three prior felony convictions. *See* § 16–13–101.

In the absence of Gaskins' conviction as a habitual criminal, the applicable sentencing statutes would have subjected him to a maximum sentence of two years imprisonment for third-degree assault, § 18–1–106, 8B C.R.S. (1986), and to a maximum sentence of four years imprisonment for attempt to commit theft, § 18–1–105(1)(a)(IV), 8B C.R.S. (1986 & 1991 Supp.). Gaskins, however, received a mandatory sentence of life imprisonment pursuant to the habitual criminal statute, section 16–13–101. The jury determined that he had previously been convicted of three felonies, which provided the basis for his habitual criminal conviction. The first occurred in 1976, when Gaskins entered a guilty plea

---

1. The Eighth Amendment to the United States Constitution and article II, section 20, of the Colorado Constitution provide that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment proscription of cruel and unusual punishments is applicable to the states through the Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). The defendant does not contend that the Colorado Constitution provides any protections additional to those available under the United States Constitution with respect to the proportionality issue before us in this case. We therefore assume for the purpose of this opinion that the relevant requirements of the two constitutions are the same.

2. § 18–3–204, 8B C.R.S. (1986) (a class 1 misdemeanor).

3. § 18–2–101, 8B C.R.S. (1986) (a class 5 felony). This section was amended in 1989 after Gaskins was sentenced. *See* § 18–2–101, 8B C.R.S. (1991 Supp.). The amendment altered the felony classifications for attempt offenses, but even if applicable, would not have changed Gaskins' offense from a class 5 felony.

to a charge of second-degree assault, a class 4 felony, for an assault on a police officer, and was sentenced to four years imprisonment. The second felony conviction occurred in June of 1981, when a jury found him guilty of attempt to commit criminal trespass, a class 5 felony. He received a sentence of eighteen months imprisonment plus one year parole for that crime. The third felony conviction was entered in August of 1981, based on Gaskins' plea of guilty to a charge of theft, a class 4 felony, for entering an apartment and taking a jacket, tie tack, and knife. The court sentenced him to four years imprisonment plus one year probation for that offense.

Gaskins objected to the imposition of a life sentence in the present case, asserting that it is disproportionate to the gravity of the crime and, therefore, in violation of the cruel and unusual punishments clauses of the United States and Colorado Constitutions.[4] The trial court noted the objection but found that the information accompanying the objection was insufficient to conduct a proportionality review.[5] The court then ruled that imposition of a life sentence is mandatory under section 16–13–101 upon conviction as a habitual criminal, and sentenced Gaskins accordingly.

The court of appeals affirmed the judgment of conviction but vacated the life sentence and remanded the case for a proportionality review and resentencing. *People v. Gaskins,* No. 88CA0159 (Colo.App. May 17, 1990) (unpublished opinion). The court held that the trial court is in a better position to conduct a proportionality review, particularly "when the focus [is] on the defendant's record in its entirety, rather than upon the seriousness of the present offense." *Gaskins,* slip op. at 4. We granted certiorari to determine whether the

court of appeals abused its discretion by remanding the case for a proportionality review.

We first set forth the provisions of the habitual offender statute at issue in this case and review the standards for proportionality review established by the United States Supreme Court in the seminal case of *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). We then address and reject the People's argument that proportionality review of a life sentence imposed under the Colorado habitual criminal statute is not constitutionally required. Finally, we consider the standards for conducting the constitutionally required proportionality review of a sentence and for determining whether such a review can be performed initially by an appellate court without the necessity for remand. As a result of our analysis, we conclude that the court of appeals acted within its discretion in remanding this case to the trial court to review Gaskins' sentence for proportionality.

## II.

### A.

The Colorado habitual criminal statute provides in pertinent part that

[e]very person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes, either in this state or elsewhere, of a felony ... shall be adjudged an habitual criminal and shall be punished by imprisonment in a correctional facility for the term of his or her natural life.

§ 16–13–101(2). A person sentenced to life imprisonment pursuant to the habitual

---

**4.** The claim under the Colorado Constitution was first raised in a brief filed by the defendant in the court of appeals. The People have not objected to consideration of this issue. As noted in footnote 1, above, the defendant does not argue that the Colorado Constitution provides any protections additional to those available under the federal constitution with respect to the cruel and unusual punishments issue. We therefore elect to consider both the federal and state constitutional issues.

**5.** Although the record suggests a question whether the defendant properly presented the Eighth Amendment proportionality issue in the trial court, the People have not argued for reversal on that basis. In the interest of judicial economy, we elect to treat the proportionality issue as properly before us.

criminal statute is not eligible for parole "until he has served at least forty calendar years ...." § 17–22.5–104(2)(c), 8A C.R.S. (1986).[6]

### B.

The United States Supreme Court addressed a cruel and unusual punishments challenge to the constitutionality of South Dakota's recidivist statute, an act bearing some similarities to the Colorado habitual criminal statute,[7] in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The South Dakota statute authorized a maximum sentence of life imprisonment without parole for a felony conviction when the defendant had sustained at least three prior convictions. The defendant in *Solem* sought habeas corpus relief from a sentence to life imprisonment under the recidivist statute for the felony offense of passing a "no account" check for $100. His record included six prior felony convictions, three for third-degree burglary, and one each for obtaining money under false pretenses, grand larceny, and third-offense driving while intoxicated. The Court noted that the record contained no details about the circumstances of the prior offenses except that "they were all nonviolent, none was a crime against a person, and alcohol was a contributing factor in each case," *id.* at 280, 103 S.Ct. at 3005, as it was in the commission of the offense for which the defendant in *Solem* was being sentenced. *Id.* at 279–81, 103 S.Ct. at 3004–05. The Court held that the cruel and unusual punishments clause of the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Id.* at 284, 103 S.Ct. at 3006. Concluding that the

defendant's sentence was "significantly disproportionate to his crime," *id.* at 303, 103 S.Ct. at 3016, the Court affirmed the judgment of the Eighth Circuit Court of Appeals directing that the defendant's petition for habeas corpus relief be granted unless the state resentenced the defendant. *Id.* at 283–84, 303, 103 S.Ct. at 3006–07, 3016.

In reaching the result in *Solem*, the Court held "as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted" and that "no penalty is *per se* constitutional." *Id.* at 290, 103 S.Ct. at 3009. The Court cautioned, however, that "[r]eviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Id.* at 290, 103 S.Ct. at 3009.

In *Solem*, the Court identified three sets of objective factors, or criteria, to be employed in reviewing sentences for proportionality under the Eighth Amendment. First, a court must examine the gravity of the offense and the harshness of the penalty. *Id.* at 290–91, 103 S.Ct. at 3009–10. Second, "it may be helpful" to compare the sentence to the sentences imposed on other criminals in the same jurisdiction. *Id.* at 291, 103 S.Ct. at 3010. "If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." *Id.* Third, a court "may find it useful to compare the sentences imposed for commission of the same crime in other

---

**6.** § 17–22.5–104(2) was amended in 1990 by the addition of a new subsection (d) providing that "[n]o inmate imprisoned under a life sentence for a crime committed on or after July 1, 1990, shall be eligible for parole." Ch. 118, sec. 3, § 17–22.5–104(2)(d), 1990 Colo. Sess. Laws 927, 928. § 17–22.5–104(2)(d) was amended in 1991 to read:

No inmate imprisoned under a life sentence for a class 1 felony committed on or after July 1, 1990, shall be eligible for parole. No inmate imprisoned under a life sentence pursuant to section 16–13–101(2), C.R.S., for a

crime committed on or after July 1, 1990, shall be paroled until such inmate has served at least forty calendar years, and no application for parole shall be made or considered during such period of forty years.

Ch. 73, sec. 4, § 17–22.5–104(2)(d), 1991 Colo. Sess.Laws 402, 404.

**7.** In contrast to the Colorado habitual criminal statute at issue in this case, South Dakota's recidivist statute provided that a life sentence was a maximum sentence but not a mandatory sentence.

jurisdictions." *Id.* at 291–92, 103 S.Ct. at 3010–11. Applying these factors, the Court in *Solem* concluded that the defendant's sentence did not satisfy the proportionality requirement of the Eighth Amendment.[8]

### III.

We have held in *Alvarez v. People*, 797 P.2d 37 (Colo.1990), *People v. Drake*, 785 P.2d 1257 (Colo.1990), and *People v. Hernandez*, 686 P.2d 1325 (Colo.1984), based on our analysis of *Solem*, that a defendant who challenges the constitutionality of a life sentence imposed under Colorado's habitual criminal statute is entitled to a proportionality review of that sentence under the United States Constitution.[9] The People ask that we reconsider those holdings and urge that the possibility of parole, the requirement of four felony convictions before a life sentence can be imposed, and the fact that "trivial misconduct" is not classified as a felony in Colorado all contribute to the conclusion that *Solem* does not apply and proportionality review is not constitutionally required. We find nothing in these arguments, which are based on considerations that were familiar to this court when *Alvarez*, *Drake*, and *Hernandez* were decided, that casts into question the soundness of our holdings in those cases.[10] As we stated in *Alvarez*, "[t]he provisions of the Habitual Criminal Act create a unique possibility that a defendant will receive a life sentence which is not proportionate to the crime for which the defendant has been convicted." 797 P.2d at 40. We therefore reject the People's invitation to reconsider our conclusion that a defendant is entitled to a proportionality review of a life sentence imposed under the habitual criminal statute and that this entitlement is grounded in the Eighth Amendment to the United States Constitution and article II, section 20, of the Colorado Constitution.

### IV.

The People contend that if the defendant is entitled to a proportionality review of his life sentence, the review should have been

---

**8.** The Court distinguished *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), in which it had upheld a life sentence imposed under a Texas recidivist statute against a challenge that it violated the cruel and unusual punishments clause of the Eighth Amendment. The principal ground of distinction was the possibility of parole under Texas' sentencing scheme. Under the Texas system of good time credits, a prisoner receiving a life sentence could become eligible for parole in as short a time as ten years and, historically, could have expected to become eligible, in the normal course of events, in only twelve years. *Solem*, 463 U.S. at 300–02, 103 S.Ct. at 3014–15. The Court held that South Dakota's system of executive commutation, which amounted to an ad hoc exercise of executive clemency rather than a benefit available under a structured legislative system of entitlement based on objective standards, was fundamentally different from the Texas system of parole. *Id.* at 300–03, 103 S.Ct. at 3014–15.

**9.** Our holding in *Alvarez* was also based on article II, section 20, of the Colorado Constitution. 797 P.2d at 38.

**10.** The United States Supreme Court's recent decision in *Harmelin v. Michigan*, —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), leaves the future of *Solem* somewhat clouded. In

*Harmelin*, in a 5–4 decision the Court upheld a statutorily mandated life sentence without possibility of parole for the crime of possession of more than 650 grams of cocaine, a quantity which Justice Kennedy described as having "a potential yield of between 32,500 and 65,000 doses." *Id.* 111 S.Ct. at 2705 (Kennedy, J., concurring). The justices produced five separate opinions. Justice Scalia, joined by Chief Justice Rehnquist, wrote that *Solem* was wrongly decided in that the Eighth Amendment contains no proportionality guarantee with respect to the length of legislatively authorized sentences of imprisonment. Justice Kennedy, joined by Justices O'Connor and Souter, would read prior cases including *Solem* to hold "that intra- and inter-jurisdictional analyses [the second and third factors in *Solem* ] are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 111 S.Ct. at 2707. Justice White, joined in the relevant parts of his analysis by Justices Blackmun, Stevens, and Marshall, reads *Solem* to require that the three sets of factors identified in that case as applicable to proportionality analysis apply in all proportionality reviews under the Eighth Amendment. In absence of more definitive guidance from the United States Supreme Court, we shall adhere to our prior understanding of the requirements of *Solem*. *See* section IIB of this opinion.

conducted by the court of appeals. The People argue, therefore, that the court of appeals abused its discretion by remanding the case to the trial court for this purpose. In order to assess the merits of this argument, we must delineate the character and scope of the review to which the defendant is entitled. In that way, we can determine whether such a review entails the determination of facts, a task for which a trial court is uniquely suited, or simply a review of the existing record, a function that an appellate court can perform without the necessity for remand.

We first considered the nature and scope of a required proportionality review in *Hernandez*, 686 P.2d 1325. The defendant was convicted of second-degree burglary and conspiracy to commit second-degree burglary, and was adjudicated a habitual criminal. His habitual criminal status was based on prior convictions for six felonies including robbery and sale of narcotic drugs. *Id.* at 1329 n. 3. He received a mandatory sentence to life imprisonment based on his habitual criminal conviction. The defendant challenged his sentence under the cruel and unusual punishments clause of the Eighth Amendment, contending that a life sentence predicated on a felony involving a "non-violent crime against property" cannot stand. *Id.* at 1329. We rejected this challenge. We acknowledged the requirement under *Solem* that the defendant receive a proportionality review and noted as well *Solem*'s adoption of "[t]hree objective criteria which may guide proportionality review of a habitual criminal sentence." *Id.* at 1330. Our review, however, consisted of noting the gravity of both the substantive offense for which the defendant was convicted and the prior felonies upon which his adjudication as a habitual offender was based, and observing that all the offenses were "more serious than those in *Solem*, and include serious violent crimes." *Id.* In addition, we took into account that, in contrast to South Dakota's statute reviewed in *Solem*, Colorado's sentencing statutes provided for the possibility of parole. The defendant was eligible for parole after serving twenty years. *See* § 17–2–207, 8 C.R.S. (1978 &

1983 Supp.). The report contains no suggestion that the defendant presented information or argument concerning sentences imposed for other crimes in Colorado or for the same crime in other jurisdictions, the second and third *Solem* factors.

We applied *Hernandez* in *People v. Drake*, 785 P.2d 1257, in which the defendant was convicted of accessory to the crime of first-degree murder and sentenced to life imprisonment based on his adjudication as a habitual criminal. We noted the three criteria set forth in *Solem* for conducting a proportionality analysis. However, we did not specifically discuss the second and third *Solem* criteria. We limited our analysis to the conclusion that accessory to first-degree murder is a more serious offense than the second-degree burglary offenses for which the defendant in *Hernandez* was convicted. We noted additionally that the defendant in *Drake* would be eligible for parole in twenty years. Without detailed analysis, we stated that our rejection of the defendant's Eighth Amendment challenge also was arrived at in view of "the length of the defendant's parole-eligible sentence compared to sentences imposed on other defendants in this and other jurisdictions." *Id.* at 1275.

In *Alvarez v. People*, 797 P.2d 37, we again had occasion to consider the nature and scope of a required proportionality review of a life sentence imposed under the habitual criminal act. The defendant was convicted of aggravated robbery, theft, and conspiracy to commit aggravated robbery and theft and was found by the jury to be a habitual criminal. *Id.* at 38. The habitual criminal determination was based on previous convictions for second-degree burglary, criminal attempt to commit theft, first-degree criminal trespass, and criminal attempt to commit second-degree burglary. *Id.* at 38, 41. The defendant argued that he was entitled to what we characterized as an "extensive proportionality review," incorporating all three of the *Solem* criteria, and that the review must be accomplished by the trial court. *Id.* at 38–39. We disagreed and conducted an abbreviated proportionality review. In doing so, we ob-

served that we had upheld the defendant's life sentence in *Hernandez* under an "abbreviated proportionality review," in which we considered "the gravity of the offenses he committed, including the fact that some of the offenses were 'serious violent crimes,' and the fact that the defendant would be eligible for parole." *Id.* at 40 (quoting *Hernandez*, 686 P.2d at 1330). Concluding in *Alvarez* that the offenses underlying the defendant's conviction and the offenses previously committed upon which his habitual criminal status was based "all represent serious violations of Colorado law," and that "the defendant is eligible for parole," we determined that only an abbreviated proportionality review was necessary.[11] *Id.* at 41. In conducting that review, we relied on the analysis in *Hernandez*, and held that the life sentence was consistent with the federal and Colorado constitutional proscriptions of cruel and unusual punishments, given the gravity of the offenses and the fact that the defendant would be eligible for parole in forty years. As in *Hernandez*, there is no suggestion that the defendant presented information or argument that the sentence was inconsistent with sentences imposed for other crimes in Colorado or in other jurisdictions.

▮ The rule to be gleaned from *Alvarez, Drake,* and *Hernandez* is that only an abbreviated review is necessary when the crimes supporting a habitual criminal sentence include grave or serious offenses and when the defendant will become eligible for parole, albeit not for forty years. The abbreviated review itself simply consists of a scrutiny of the offenses in question to determine whether in combination they are so lacking in gravity or seriousness as to sug-gest that a life sentence is constitutionally disproportionate to the crime, taking into account the defendant's eligibility for parole. In the absence of an inference of disproportionality suggested by this review or by presentation of information by the defendant that calls into question whether the sentence is disproportionate to sentences imposed on other criminals in Colorado or other jurisdictions, the second and third factors in the *Solem* test need not be explicitly employed.[12] *Cf. Harmelin*, 111 S.Ct. at 2707 (Kennedy, J., joined by O'Connor and Souter, J.J., concurring). *But see Harmelin*, 111 S.Ct. at 2715 (White, J., joined by Blackmun and Stevens, J.J., dissenting, with Marshall, J., agreeing, 111 S.Ct. at 2719). The initial scrutiny of these matters to determine whether more than an abbreviated review is necessary is not a demanding one, and only rare cases will require an extended analysis. *Alvarez*, 797 P.2d at 41.

The determination of whether the crimes involved in a habitual criminal conviction are grave or serious necessarily is somewhat imprecise. *Solem* offers helpful guidance in evaluating the gravity of an offense. The Court observed that offenses can be compared "in light of the harm caused or threatened to the victim or society, and the culpability of the offender." *Solem*, 463 U.S. at 292, 103 S.Ct. at 3010. In assessing the harm caused or threatened to society, relevant considerations include whether the crime involves violence, and the absolute magnitude of the crime (*e.g.,* theft of a large amount usually can be viewed as more serious than theft of a small amount, other circumstances being the same). *Id.* at 292–93, 103 S.Ct. at

---

**11.** In *Alvarez,* we observed that except in rare cases only an abbreviated proportionality review will be required. 797 P.2d at 41. Presuming, as we do, that the overwhelming majority of prosecutorial charging decisions are made with sensitivity to the seriousness and extent of a defendant's criminal record, this will be the case.

**12.** Justice White's dissent in *Harmelin* makes the point that "only when a comparison is made with penalties for other crimes and in other jurisdictions can a court begin to make an ob-jective assessment about a given sentence's constitutional proportionality, giving due deference to 'public attitudes concerning a particular sentence.' " 111 S.Ct. at 2715 (quoting *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977)). Certainly, in assessing the gravity or seriousness of an offense when considering cruel and unusual punishments challenges to a sentence we have implicitly taken into account the nature of other criminal offenses under Colorado law and the penalties prescribed for their violation.

3010–11. In general, a lesser-included offense is not as serious as the greater-inclusive offense, an attempt is less serious than a completed crime, and an accessory after the fact should not be subject to a higher penalty than the principal. *Id.* at 293, 103 S.Ct. at 3011. In evaluating the culpability of the offender, South Dakota's criminal statutes, for example, created a descending scale of culpability, ranking acts as malicious, intentional, knowing, reckless, or negligent. *Id.* Motive is also relevant. *Id.* *Solem* made clear that this list is not exhaustive but merely illustrative that there are "generally accepted criteria for comparing the severity of different crimes on a broad scale, despite the difficulties courts face in attempting to draw distinctions between similar crimes." *Id.* at 294, 103 S.Ct. at 3011.

In *Alvarez, Drake,* and *Hernandez* we did not find it necessary to pursue a detailed analysis to determine the gravity of the crimes in relation to the harshness of the penalty of life imprisonment. The crimes of aggravated robbery, robbery, burglary, and accessory to first-degree murder involve violence or potential for violence by their very nature. Sale of narcotic drugs is viewed with great seriousness because of the grave societal harm caused by sale of illegal drugs and the evils associated with their use. Of importance in each case was the defendant's eligibility for parole. In *Hernandez* we held that convictions for second-degree burglary and conspiracy to commit second-degree burglary, taken together with six prior felonies including robbery and sale of narcotic drugs, met the requisite requirement of gravity or seriousness to support a life sentence. Similarly, in *Drake* we held that the crime of accessory to first-degree murder, considered against a background of three prior felony convictions, was sufficiently serious to support a life sentence. In *Alvarez* we reached that same conclusion based on convictions of aggravated robbery, theft, and conspiracy to commit aggravated robbery and theft, coupled with prior convictions for second-degree burglary, criminal attempt to commit theft, first-degree criminal trespass, and criminal attempt to commit second-degree burglary. In view of the obvious gravity of the offenses for which the defendants were convicted in these cases, taken together with the number and seriousness of the charges on which the habitual criminal status of each defendant was based, we did not find it necessary to pursue a more refined or detailed analysis. In an abbreviated fashion, we could arrive at the conclusion that a life sentence, with eligibility for parole after twenty or forty years, was consistent with the constitutional prohibitions of cruel and unusual punishments.

Courts in other jurisdictions also conduct an abbreviated proportionality review when grave or serious crimes make up the basis for the imposition of an enhanced sentence under a habitual criminal statute. *See McLester v. State,* 460 So.2d 870, 873 (Ala. Cr.App.1984) (declining to apply extended *Solem* proportionality review where "triggering offense" consists of a serious, "life-endangering" crime); *Minor v. State,* 313 Md. 573, 546 A.2d 1028, 1032–33 (1988) (abbreviated proportionality review following third conviction for a crime of violence); *State v. Housden,* 399 S.E.2d 882, 884–86 (W.Va.1990) (abbreviated proportionality review where offenses involve actual or threatened violence to the person); *cf. Moore v. State,* 515 N.E.2d 1099, 1105 (Ind. 1987) (abbreviated proportionality review under state constitution given a criminal history of violent, non-property crimes). Some federal courts follow a similar pattern and conduct an abbreviated proportionality review in serious drug offense cases. *See United States v. Mendes,* 912 F.2d 434, 440–41 (10th Cir.1990) (abbreviated proportionality review following sentence to term of years for felony drug conviction); *United States v. Rhodes,* 779 F.2d 1019 (4th Cir.1985), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986) (abbreviated proportionality review following lengthy sentences without possibility of parole based on convictions for possession of a large amount of illegal drugs).

## V.

■ In the absence of a need for a refined analysis inquiring into the details of

the specific offenses or a detailed comparison of sentences imposed for other crimes in this or other jurisdictions, an appellate court is as well positioned as a trial court to conduct a proportionality review. In such circumstances, there is no need or justification for remand. *Alvarez, Drake,* and *Hernandez* illustrate such a situation. We rejected the contention in *Alvarez* that the review must be conducted by the trial court rather than an appellate tribunal because we determined that a refined analysis requiring inquiry into specific facts not available on the appellate record was unnecessary.

In less clear cases, however, a court may need to examine the facts underlying the offenses in question in order to assess the harm caused or threatened to the victim or society and the culpability of the offender. This may be the only way a court could conduct a meaningful proportionality review. The proportionality review may require factual findings concerning the crime, the level of violence, and the other factors *Solem* identified in evaluating the severity of the crimes in question. As the Colorado Court of Appeals held in *People v. Austin,* 799 P.2d 408, 413 (Colo.App. 1990):

> the trial court is in a better position than the appellate court to receive evidence and to conduct the proportionality review in the first instance subject to review on appeal. This is not to say that such review cannot be conducted at the appellate level if, as in *People v. Drake, supra,* the seriousness of the present crime is the focus of the review, or if the focal point is the seriousness of the present crime and the predicate offenses as in *People v. Hernandez, supra.*

■ Although the ability of an appellate court to conduct a proportionality review is somewhat dependent on the character and extensiveness of the information in the record, factual inquiries are best suited to performance by a trial court. In deciding whether to remand, therefore, an appellate court should first consider the inherent gravity of the offenses and determine whether an abbreviated proportionality review is appropriate. If it is not, the court should then assess the information available in the record and determine whether the parties wish to adduce additional evidence relevant to constitutional proportionality. If the appellate court determines that additional evidence is necessary or desirable, the court should remand for an initial proportionality review by the trial court. These determinations necessarily cannot be made with litmus test certainty, and an appellate court should be accorded a generous degree of discretion in making the decision whether to remand.[13]

With the foregoing principles in mind, we now address whether the court of appeals abused its discretion in remanding the present case to the district court to conduct a proportionality review.

## VI.

■ The court of appeals remanded this case to the trial court based on its observation "that the trial court is in a better position than the appellate court to conduct the proportionality review.... particularly ... when the focus [is] on the defendant's record in its entirety, rather than upon the seriousness of the present offense." *Gaskins,* slip op. at 4. We agree that in the

13. The trial court, in turn, should have discretion to control the character and scope of the evidence that is presented concerning constitutional proportionality. The trial court is in the best position to evaluate, as the hearing progresses, the extensiveness of the factual inquiries necessary to make a fully informed and legally sound proportionality determination. In some cases, for instance, it may be necessary that the trial court review part or all of the record of a trial in order to evaluate the seriousness of a prior offense. In others, a record of a providency hearing, a presentence investigation report, or other abbreviated summary of the facts underlying the conviction may provide adequate, reliable information for the purpose of proportionality review. The court, with the assistance of the parties, may devise other ways of obtaining the necessary information. The trial court should exercise its discretion to control evidentiary presentations to serve the dual goals of obtaining adequate information to assure an informed decision and conserving judicial resources by curtailing presentation of unnecessarily extensive evidence.

present case the nature and character of the crimes at issue support the court of appeals' exercise of discretion in returning the case to the trial court for the development of a factual record. None of the underlying crimes are intrinsically so grave or serious that the court of appeals can be held to have abused its discretion in remanding the case to a forum better adapted for development of the facts and circumstances surrounding the crimes.[14] On their faces, the crime of attempt to commit theft, for which Gaskins was sentenced, and the crimes of second-degree assault, attempt to commit criminal trespass, and theft, upon which his habitual criminal adjudication was based, are of a lesser degree of gravity than the multiple offenses including burglary, robbery, and sale of narcotic drugs in *Alvarez* and *Hernandez,* and do not approach the magnitude of the accessory to first-degree murder crime involved in *Drake.* The statutory elements of the crimes underlying Gaskins' sentence encompass a broad range of conduct. The court of appeals properly could determine that development of further facts concerning the circumstances of Gaskins' offenses [15] and possibly a comparison of sentences imposed for like crimes in this and other jurisdictions would be necessary for a full and fair evaluation of the defendant's constitutional challenges to his life sentence.[16]

### VII.

We continue to adhere to the principle that the prohibition of "cruel and unusual punishments" found in the Eighth Amendment to the United States Constitution and in article II, section 20, of the Colorado Constitution, necessitates a proportionality review of a life sentence imposed pursuant to the Colorado habitual criminal statute. In cases where the severity of the crime is compelling and there is a possibility of parole, the appellate court may conduct an abbreviated review. In other cases the appellate court should exercise discretion under the guidelines enunciated in this opinion in deciding whether to conduct the more extended proportionality review itself or remand to the trial court for that purpose. In the present case, the court of appeals acted within its discretion in remanding the case to the trial court to conduct a proportionality review.

Judgment affirmed.

---

14. *Solem* also anticipates an examination of the underlying facts of the crimes in question. 463 U.S. at 296–97, 103 S.Ct. at 3012–13.

15. A sketch of the circumstances of the two prior offenses to which Gaskins pleaded guilty was available to the court of appeals in records of the providency hearings in which those circumstances are outlined in setting forth the factual bases for the pleas. The circumstances of the crime for which the defendant was sentenced were available in the record of the trial.

16. We should not be understood to hold that it would have been an abuse of discretion for the court of appeals to resolve the proportionality issue without remanding. That issue is not before us. We simply determine that the order of remand was within the broad discretion accorded to the court of appeals in matters of this kind.