COLORADO COURT OF APPEALS                                    **2017COA80**

Court of Appeals No. 13CA1750
Boulder County District Court Nos. 11CR1849 & 11CR1850
Honorable Maria E. Berkenkotter, Judge
Honorable Roxanne Bailin, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kyle Brooks,

Defendant-Appellant.

JUDGMENT AND SENTENCE AFFIRMED

Division II
Opinion by JUDGE BERGER
Dailey and J. Jones, JJ., concur

Announced June 15, 2017

Cynthia H. Coffman, Attorney General, Christine Brady, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Jud Lohnes, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     A jury convicted defendant, Kyle Brooks, of eight substantive offenses, including two counts of tampering with a witness or victim.  The district court adjudicated Brooks a habitual criminal under section 18-1.3-801(2), C.R.S. 2016, and imposed a statutorily mandated sentence of twenty-four years' imprisonment.

¶ 2     Brooks appeals, claiming that (1) there was insufficient evidence to support one of his convictions of tampering with a witness or victim; (2) in adjudicating him a habitual criminal, the district court improperly took judicial notice of material in court files; (3) his guilty plea in one of the underlying convictions on the habitual criminal charges was constitutionally invalid, thus voiding his habitual criminal conviction; and (4) the court erred in concluding that his sentence was not disproportionate and in failing to conduct an extended proportionality review of his sentence. Because we hold as a matter of first impression that the tampering with a witness or victim statute does not require that the "attempt" to tamper actually be communicated to the victim or witness, we reject Brooks' sufficiency argument.  We also reject his other contentions and affirm the judgment and sentence.

## I. Relevant Facts and Procedural History

¶ 3     Brooks discovered that his girlfriend was pregnant with another man's child, argued with her, and then assaulted her. A bystander called the police. Before the police arrived, Brooks fled.

¶ 4     The police planned to arrest Brooks when he appeared for an unrelated court appearance. When officers contacted Brooks at the courthouse, he resisted arrest and struggled with them. The officers restrained and arrested him.

¶ 5     While in jail, Brooks repeatedly telephoned his girlfriend (the victim) and others in an attempt to persuade them not to testify against him on the domestic violence charge or to testify falsely. The jail recorded these conversations and turned them over to the prosecution. These telephone calls were the basis for Brooks' first conviction for tampering with a witness or victim, a class 4 felony. Brooks does not appeal that conviction.

¶ 6     After the jail officers learned of these telephone calls, Brooks' telephone privileges were discontinued, but that did not stop him from further trying to tamper with the victim. Instead of phone calls, he wrote letters to the victim to persuade her either not to testify or to testify falsely on his behalf. Because he knew that if he

attempted to mail the letters to the victim they would be intercepted by the jail, he hid them in an issue of Westword magazine and asked his cellmate to deliver them to the victim after the cellmate was released from jail. His cellmate refused to participate and instead gave the letters to a jail officer. As a result of this interception, the victim never received the letters. These letters formed the basis of the prosecution's second count of tampering with a witness or victim.

¶ 7 The jury acquitted Brooks of assault in the second degree (either a class 4 or class 6 felony) and two counts of disarming a peace officer (a class 5 felony), but the jury convicted him of two counts of assault in the third degree against the victim (a class 1 misdemeanor), two counts of assault in the third degree against a peace officer (a class 1 misdemeanor), resisting arrest (a class 2 misdemeanor), violation of a protection order (a class 1 misdemeanor), and the two counts of tampering with a witness or victim (both class 4 felonies) discussed above.

¶ 8 After the jury returned its verdicts, the district court held a trial on the habitual criminal count and adjudicated Brooks a

habitual criminal. The court imposed a twenty-four-year sentence of imprisonment, as mandated by the habitual criminal statute.

¶ 9    Brooks requested and received an abbreviated proportionality review of the mandatory sentence. At the conclusion of that hearing, the district court concluded that Brooks' sentence was not disproportionate to his offenses and denied him an extended proportionality review.

## II.    There Was Sufficient Evidence to Support Brooks' Conviction For Tampering With a Witness or Victim

¶ 10    Brooks argues that there was insufficient evidence to convict him of the second count of tampering with a witness or victim based on the letters because the victim never received them.[1] Because this argument relies on an unwarranted reading of the tampering statute, we reject it.

---

[1] Contrary to the Attorney General's claim, Brooks did not waive this argument. Brooks conceded there was sufficient evidence to convict him of the supposed inchoate crime of attempt to tamper with a witness or victim, but he did not concede there was sufficient evidence to convict him of the substantive crime of tampering with a witness or victim. Because Brooks contended the inchoate crime and the substantive crime were substantially different, his concession that there was sufficient evidence to convict him of the uncharged inchoate crime did not waive his sufficiency of the evidence claim regarding the substantive crime of which he was convicted.

¶ 11    The statute provides as follows:

> A person commits tampering with a witness or victim if he *intentionally attempts* without bribery or threats to induce a witness or victim or a person he believes is to be called to testify as a witness or victim in any official proceeding or who may be called to testify as a witness to or victim of any crime to:
>
> (a) Testify falsely or unlawfully withhold any testimony; or
>
> (b) Absent himself from any official proceeding to which he has been legally summoned; or
>
> (c) Avoid legal process summoning him to testify.

§ 18-8-707(1), C.R.S. 2016 (emphasis added).

¶ 12    Statutory interpretation is a question of law that we review de novo. *Marsh v. People*, 2017 CO 10M, ¶ 19; *Wolf Ranch, LLC v. City of Colorado Springs*, 220 P.3d 559, 563 (Colo. 2009). We begin by applying two principles to the words and phrases at issue in the statute. First, we give the words and phrases their plain and ordinary meaning according to the rules of grammar and common usage. *People v. Voth*, 2013 CO 61, ¶ 21, *Sidman v. Sidman*, 2016 COA 44, ¶ 13; § 2-4-101, C.R.S. 2016. Second, we consider the words or phrases both in the context of the statute and in the context of any comprehensive statutory scheme of which the statute

5

is a part. *Doubleday v. People*, 2016 CO 3, ¶ 20; *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010). By applying these principles, we attempt to determine the General Assembly's intended meaning of the words or phrases, and harmonize that meaning with the comprehensive statutory scheme. *Id.* If the statutory language is not susceptible of more than one reasonable meaning, we enforce it as written and do not resort to other rules of statutory construction. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1036 (Colo. 2004); *People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986).

¶ 13    Brooks argues that while an attempt to tamper need not be successful, the statute nevertheless requires that the attempt to tamper must at least reach the victim or witness.[2] Because it is undisputed that the letters did not reach the victim, Brooks claims that there was insufficient evidence to support his conviction. He concedes that he is guilty of a criminal attempt, as defined in section 18-2-101(1), C.R.S. 2016, to tamper with a witness or

_____

[2] Brooks did not waive this argument either. He acquiesced in the trial court's elemental instruction on tampering with a witness or victim but did not waive his argument that, to sustain a conviction, the tampering had to actually be communicated to the victim.

victim, but notes that he was not charged with this crime (a crime that, as we discuss below, does not exist).

¶ 14    We reject this argument because the concept of attempt is built into the tampering statute — the crime is completed when a defendant "intentionally attempts" to tamper with a victim or witness. § 18-8-707(1). If there were such a crime as attempted tampering with a witness or victim, it would be defined as "engaging in conduct constituting a substantial step toward the commission of the offense" of "intentionally attempt[ing]" to tamper with a witness or victim. *See* §§ 18-2-101(1), 18-8-707. We conclude that no such crime exists because it would be illogical to recognize a crime premised on an attempt to attempt, and "[a] statutory interpretation leading to an illogical or absurd result will not be followed." *Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004).

¶ 15    *People v. Yascavage*, 101 P.3d 1090 (Colo. 2004), does not require a different result. In *Yascavage*, the Colorado Supreme Court held that there was insufficient evidence to support the defendant's conviction for solicitation to tamper with a witness or victim. *Id.* at 1096. Brooks argues that the court's recognition of the crime of solicitation to tamper with a witness or victim

7

necessitates the recognition of the crime of attempting to tamper with a witness or victim. Brooks cites no authority, and we have found none, for the proposition that the existence of one inchoate form of an offense requires the existence of other inchoate forms of the offense.

¶ 16    We also observe that the *Yascavage* court held that "[t]he purpose of the [tampering with a witness or victim statute] was to punish *any attempt* to induce another to testify falsely or otherwise to subvert the administration of justice." *Id.* at 1092 (emphasis added). Thus, *Yascavage* provides no support for Brooks' contention that there is a crime of attempt to attempt to tamper with a witness or victim.

¶ 17    Neither does *People v. Scialabba,* 55 P.3d 207 (Colo. App. 2002), in which the division held that the defendant, who was charged with witness tampering, was not entitled to an instruction on the affirmative defense of abandonment. The defendant sent a letter to the victim trying to convince her not to appear in court and also asked his mother to tell the victim not to appear in court. *Id.* at 210. Because the defendant had completed the crime when he sent the letter and asked his mother to dissuade the victim from

8

testifying, the division held that he was not entitled to an abandonment instruction. *Id.* at 210-11. Contrary to Brooks' contention, the division did not hold that attempted but unaccomplished communication with the victim or witness could not support a conviction under the statute.

¶ 18 Nothing in the plain language of the statute requires that the defendant actually contact a witness or victim either. Rather, an attempt by the defendant to do so is all the statute requires in this respect. The trial court instructed the jury that "attempt" in the tampering with a witness or victim statute means, "intentionally engaging in conduct constituting a substantial step toward the commission of the crime of Tampering with a Witness."[3] The jury

---

[3] Brooks makes a perfunctory argument that the trial court erred when it defined the word "attempt" by utilizing the definition contained in the criminal attempt statute, section 18-2-101, C.R.S. 2016. Brooks contends that the common dictionary definition of "attempt" should have been used instead. The common meaning of the word attempt is "to make an effort to do, accomplish, solve, or effect." Webster's Third New International Dictionary 140 (2002). But the use of the statutory definition of criminal attempt was more favorable to Brooks than the dictionary definition because it imposed a greater proof burden on the prosecution. Therefore, any error in this respect could not have harmed Brooks. This conclusion also makes it unnecessary for us to determine in this case what meaning should be given to the word "attempt" in the

was entitled to find that Brooks did everything within his power to attempt to unlawfully influence the victim. He wrote the letters, concealed them from the jail staff, and asked another inmate to deliver them to the victim. The fact that Brooks' scheme failed provides him no defense.

¶ 19 For these reasons, we conclude that there was sufficient evidence to support Brooks' second conviction for tampering with a witness or victim.

### III. The District Court Did Not Abuse Its Discretion in Taking Judicial Notice of Court Files in the Habitual Criminal Adjudication, and Sufficient Evidence Supported the Habitual Criminal Adjudication

¶ 20 Brooks argues that the district court abused its discretion in taking judicial notice of the complete case files of his prior felony convictions and that without such improper judicial notice there was insufficient evidence to support the habitual criminal adjudication.

---

tampering statute. "[I]f it is not necessary to decide more, it is necessary not to decide more[.]" *PDK Labs. Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).

¶ 21     A conviction under the habitual criminal statute at issue requires the prosecution to prove beyond a reasonable doubt that a defendant has three prior felony convictions arising out of separate and distinct criminal episodes. § 18-1.3-801(2)(a)(I)(A).

¶ 22     Brooks contends that only by taking judicial notice of documents that were not properly subject to judicial notice could the court have found that his prior convictions for criminal trespass of a dwelling and theft from a person "relate to different criminal conduct on separate dates and that the People have separately brought and tried those offenses." Because the predicate of his argument is wrong, we reject it.

¶ 23     Brooks concedes (for good reason) that the district court was entitled to take judicial notice of the registers of actions contained in the Integrated Colorado Online Network in the underlying cases. *See, e.g.*, *People v. Sa'ra*, 117 P.3d 51, 56 (Colo. App. 2004) ("A court may take judicial notice of the contents of court records in a related proceeding."). But he argues that the registers of actions themselves were insufficient to make a prima facie case that two of his three prior felonies related to different criminal conduct on separate dates and were separately brought and tried.

11

¶ 24    The registers of actions for these felony convictions establish the following:

- In Boulder District Court case number 10CR716, Brooks pleaded guilty to first degree trespass of a dwelling on June 18, 2010, with an offense date of February 5, 2010.

- In Boulder District Court case number 10CR760, Brooks pleaded guilty to theft from a person June 18, 2010, with an offense date of April 17, 2010.

The information contained in the registers of actions made a prima facie showing that these cases addressed different criminal conduct that occurred on different dates.

¶ 25    But because Brooks entered guilty pleas in both cases on the same date and in the same court, whether the prosecution separately brought and tried these cases is a closer question.  The proof required to establish whether two guilty pleas entered on the same date would have been separately tried is whether — under the mandatory joinder statute — they arose out of separate and distinct criminal episodes.  *People v. Jones*, 967 P.2d 166, 169 (Colo. App. 1997).  Information such as the dates on which the crimes were committed and the types of crimes committed may prove that the

crimes were separate and distinct criminal episodes. *People v. Copeland*, 976 P.2d 334, 342 (Colo. App. 1998), *aff'd*, 2 P.3d 1283 (Colo. 2000).

¶ 26    In *People v. Jones*, 967 P.2d 166, 170 (Colo. App. 1997), it was plausible that two crimes, which were both burglaries, committed on consecutive dates, and in the same area, could have arisen from a single criminal episode. Therefore, without additional evidence about the underlying convictions, the division concluded that there was insufficient proof that the defendant's convictions arose from separate and distinct criminal episodes. *Id.*

¶ 27    However, unlike in *Jones*, the registers of actions relevant to this case showed that the two prior felony convictions were for distinct criminal offenses that occurred months apart. Thus, even though Brooks pleaded guilty on the same day and in the same court, the registers of actions made a prima facie case that his criminal trespassing of a dwelling and theft from a person convictions arose "from charges which, had they not been adjudicated through the entry of guilty pleas, would have been tried separately." *Gimmy v. People*, 645 P.2d 262, 267 (Colo. 1982). Both cases were "separately 'brought' — i.e., in separate

13

informations, with separate docket numbers, arising out of separate criminal incidents." *Id.*

¶ 28    While Brooks was free to attempt to disprove these facts, he chose not to do so. It follows that sufficient evidence supported Brooks' habitual criminal conviction.

IV.    Brooks' Guilty Plea to Felony Theft Was Valid

¶ 29    Brooks argues that his plea of guilty to felony theft from a person — his third underlying felony conviction — was constitutionally invalid and thus could not support his habitual criminal conviction.

¶ 30    "A prior conviction obtained in a constitutionally invalid manner cannot be used against an accused in a subsequent criminal proceeding to support guilt or to increase punishment." *Lacy v. People*, 775 P.2d 1, 4 (Colo. 1989).

¶ 31    To attack the constitutional validity of his prior conviction, a defendant must make a prima facie showing that the challenged conviction was unconstitutionally obtained. *Watkins v. People*, 655 P.2d 834, 837 (Colo. 1982). "A prima facie showing in the context of this case means evidence which, when considered in a light most favorable to the defendant with all reasonable inferences drawn in

14

his favor, will permit the court to conclude that the defendant's plea of guilty was not understandingly made." *Id.*

¶ 32    Brooks arguably made such a prima facie case by demonstrating that the plea court did not advise him of all the "critical elements" of felony theft, section 18-4-401(5), C.R.S. 2016. During the providency hearing, the court had the following exchange with Brooks:

> Court: How do you plead with respect to that added Count 2 which charges on or about April 17, 2010, in or triable in the County of Boulder, State of Colorado, you unlawfully, feloniously and knowingly took a thing of value, namely a purse, from the person of [female victim], in violation of Section 18-4-401, sub 1, sub 5, CRS?
>
> . . . Mr. Brooks, how do you plead with respect to added Count 2?
>
> Brooks: I wish to plead guilty, Your Honor.

¶ 33    The court's advisement and the charging document (which mirrored the court's advisement) did not advise Brooks of the specific intent element of the crime: a defendant must "[i]ntend[] to deprive the other person permanently of the use or benefit of the thing of value." § 18-4-401(1)(a). Thus, for present purposes we assume that Brooks' conviction was constitutionally invalid unless

the prosecution established by a preponderance of the evidence that Brooks' plea met constitutional requirements. *Watkins*, 655 P.2d at 837.

¶ 34 A plea is constitutionally valid when the defendant enters it voluntarily and knowingly. *Lacy*, 775 P.2d at 4. Colorado cases "have recognized that the degree of explanation that a court should provide depends on the nature and complexity of the crime and that no particular litany need be followed in accepting a tendered plea of guilty." *Id.* at 6. The record as a whole must demonstrate that the defendant understood the critical elements of the crime and the possible penalty or penalties. *Id.* at 4-5.

¶ 35 Based on the record as a whole, the district court found that Brooks' plea to the theft charge was voluntary and that Brooks understood the elements of the crime to which he pleaded guilty. The court found that the facts of the underlying crime were that Brooks distracted a woman so that another man could steal her purse. Considering these facts, the court held that "the very nature of the underlying crime would advise Mr. Brooks . . . that this theft was one that involved an intent to permanently deprive." We agree.

¶ 36    If the law were as Brooks contends — that the defendant must always be advised expressly of every element of the crime to validate the conviction under the habitual criminal statute — we would agree with him.  But the law is otherwise.

¶ 37    Brooks relies on two Colorado Supreme Court cases, *People v. Colosacco*, 177 Colo. 219, 493 P.2d 650 (1972), and *Lacy*, 775 P.2d 1, where the trial court's failure to include a meaningful explanation of the specific intent element of the crime was fatal to the validity of the conviction.  But *Colosacco* and *Lacy* are factually distinguishable because in those cases, unlike this one, the underlying nature of the crime required the court to inform the defendant of the crime's specific intent element.

¶ 38    In *Colosacco*, the defendant pleaded guilty to possession of counterfeit checks after the judge advised him that the nature of the charge was "possession of the forged or counterfeit [checks] with knowledge that they were counterfeit."  177 Colo. at 221, 493 P.2d at 650.  Under the facts presented, the defendant could have reasonably believed that he was guilty of the crime simply by possessing checks, irrespective of whether he intended to pass them with the intent to defraud.  Thus, because the judge "failed . . . to

17

advise the defendant that the intent to utter and pass the notes with intent to defraud was an essential element of the charge," the supreme court concluded that the defendant's guilty plea was invalid. *Id.* at 221-22, 493 P.2d at 650-51.

¶ 39 In *Lacy*, the Colorado Supreme Court considered a guilty plea to theft of a car. 775 P.2d at 8. The victim testified that she had loaned the car to the defendant on past occasions but that she had not given him permission to use it on the occasion that gave rise to the theft charge. *Id.* Therefore, without an explanation of the specific intent element, the defendant could have reasonably believed that he was guilty of theft for borrowing the victim's car, even if he did not intend to permanently deprive her of it. Because the providency hearing was "entirely devoid of any accurate or understandable explanation of the charge," the defendant's plea was invalid. *Id.* at 9.

¶ 40 The facts and crimes in *Colosacco* and *Lacy* are distinguishable from Brooks' theft of a purse from a person whom he did not know. We agree with the district court that it is inconceivable that forcibly grabbing a stranger's purse would be for

any purpose other than to permanently deprive the owner of her property.

¶ 41    Several out-of-state cases further support this analysis.

¶ 42    In *State v. Gabert,* 564 A.2d 1356, 1358 (Vt. 1989), the defendant pleaded guilty to lewd and lascivious conduct.  He conceded that he understood the charge, but he argued that his plea was invalid because of "the court's failure to explain that the crime involves acts intentionally done 'with a view to excite unchaste feelings and passions.'"  *Id.* (citation omitted).  The Vermont Supreme Court rejected this argument, concluding that the plea was valid because "under the circumstances here further inquiry about intent was unnecessary.  The alleged acts could hardly give rise to an equivocal motivation . . . ."  *Id.*

¶ 43    In *State v. Brooks,* 586 P.2d 1270, 1271 (Ariz. 1978), the defendant challenged the validity of his guilty plea to child molestation.  He argued there was no evidence that he understood intent to be an essential element of the crime.  *Id.*  Under Arizona law, "[a]n essential element of the offense of child molestation . . . is that the acts involved be 'motivated by an unnatural or abnormal sexual interest or intent with respect to children.'"  *Id.* at 1272

(citation omitted). But "[a]t no time during [the court's] questioning of defendant prior to [the court's] acceptance of his guilty plea did [the court] inquire into his motivation for the offense." *Id.* The Arizona Supreme Court rejected the defendant's argument because the "defendant's acts by their very nature manifest that he was motivated by an unnatural or abnormal sexual interest or intent with respect to children." *Id.* at 1273.

¶ 44 By contrast, in *Patton v. State*, 810 N.E.2d 690, 691 (Ind. 2004), the defendant pleaded "guilty to attempted murder without knowing that specific intent to kill was an element of that offense." The Indiana Supreme Court found the defendant's plea was invalid because the evidence did not demonstrate specific intent beyond a reasonable doubt. *Id.* at 698-99. But the court also held that "failure of notice that specific intent is an element of attempted murder will constitute harmless error . . . where during the course of the guilty plea or sentencing proceedings, the defendant unambiguously admits to, or there is other evidence of, facts that demonstrate specific intent beyond a reasonable doubt." *Id.* at 696-97.

¶ 45    For all of these reasons, we conclude that the felony theft conviction was constitutionally valid and that the district court properly found it to be a predicate felony conviction for Brooks' habitual criminal adjudication.

¶ 46    Brooks also argues that, in addition to the specific intent element of theft, the court should have explained the elements of complicity to him, as was required in *People v. Martin*, 791 P.2d 1159, 1161-62 (Colo. App. 1989).

¶ 47    In *Martin*, a division of this court held that a defendant's guilty plea was constitutionally defective because the court did not explain the elements of complicity to him. *Id.* Defense counsel explained to the court that the defendant had accepted the fruits of a burglary and only pleaded guilty to burglary based on a theory of complicity. *Id.* at 1161.

¶ 48    However, *Martin* is different from the present case for three reasons. First, Brooks was more directly involved in the theft than the defendant in *Martin* was in the burglary. Second, Brooks pleaded guilty as a principal and not, like the defendant in *Martin*, as a complicitor. Finally, complicity liability in a burglary by after-the-fact involvement is more complex than Brooks' immediate

involvement in the crime of theft. Thus, unlike in *Martin*, the court did not render Brooks' plea unconstitutional by failing to explain the elements of complicity.

¶ 49 For these reasons, we conclude that Brooks made his plea voluntarily and knowingly and that the district court did not err in finding that it was a valid prior felony conviction under the habitual criminal statute.[4]

### V. Brooks' Habitual Criminal Sentence Was Not Grossly Disproportionate to His Crimes

¶ 50 A habitual criminal sentence violates the Eighth Amendment if it is grossly disproportionate to the defendant's crimes. *See People v. Deroulet*, 48 P.3d 520, 523-24 (Colo. 2002). Brooks argues that the district court erred in concluding that his sentence was not grossly disproportionate to his crimes and in not granting him an extended proportionality review. We reject his argument.

---

[4] Although we conclude that Brooks' plea was voluntary and knowing, we do not agree with the Attorney General that this is so solely because Brooks conferred with his counsel. "[A] showing that defense counsel gave some explanation to his client of the charge to which the guilty plea is tendered does not by itself sufficiently demonstrate that the defendant knew the critical elements of the crime when the plea was entered." *Lacy v. People*, 775 P.2d 1, 6 (Colo. 1989).

¶ 51    If a defendant challenges the proportionality of a habitual criminal sentence, the defendant "is entitled to an abbreviated proportionality review of his or her sentence under the habitual criminal statute." *People v. Cooper*, 205 P.3d 475, 479 (Colo. App. 2008), *abrogated on other grounds as recognized by Scott v. People*, 2017 CO 16. When conducting an abbreviated proportionality review, a reviewing court scrutinizes the triggering and predicate offenses in question to determine "'whether in combination they are so lacking in gravity or seriousness' so as to suggest that the sentence is grossly disproportionate." *Deroulet*, 48 P.3d at 524-25 (citation omitted).

¶ 52    Colorado courts have held that certain crimes are per se grave or serious. *People v. Gaskins*, 825 P.2d 30, 37 (Colo. 1992). These crimes are grave or serious "by their very nature." *Id.* For other crimes, "the determination of whether the crime is grave or serious depends on the facts and circumstances underlying the offense." *People v. Hargrove*, 2013 COA 165, ¶ 12. Specifically, courts look to "whether the crime involves violence, and the absolute magnitude of the crime" and compare that to the culpability and motive of the defendant. *Gaskins*, 825 P.2d at 36-37.

¶ 53    "If, and only if, that abbreviated proportionality review gives rise to an inference of gross disproportionality does a . . . court need to engage in an extended proportionality review," in which it compares the sentence at issue to sentences for the same offense in the same jurisdiction and other jurisdictions. *Close v. People*, 48 P.3d 528, 536 (Colo. 2002).  If the abbreviated proportionality review yields no inference of gross disproportionality, the district court must impose the sentence mandated by the habitual criminal statute. *Hargrove*, ¶ 14.

¶ 54    Whether an abbreviated proportionality review yields an inference of gross disproportionality is a question of law that we review de novo. *People v. McNally*, 143 P.3d 1062, 1064 (Colo. App. 2005).

## A.    Triggering Offenses

¶ 55    Tampering with a witness or victim is not a per se "grave or serious" offense.  However, we agree with the district court that the facts underlying these crimes were grave or serious.

¶ 56    The district court explained that Brooks' attempts to tamper with the victim constituted "an extensive and extreme scheme to tamper with the witness; in fact, I have never seen anything like it."

¶ 57    The prosecution identified at least 250 phone conversations in which Brooks attempted to tamper with a witness or victim. Further, as noted above, even after his conduct came to light, his phone privileges were suspended, and he was charged with the first count of tampering, Brooks continued his attempts to tamper with the victim.[5]  For these reasons, we conclude that his conduct demonstrated a blatant disregard for the law and thus constituted a grave or serious offense.

## B.    Predicate Offenses

¶ 58    We agree with Brooks that his predicate offenses of criminal trespass of a motor vehicle, criminal trespass of a dwelling, and theft from a person were not per se grave or serious.  None of these offenses fall within the list of offenses designated as per se grave or serious by Colorado courts.  *See Deroulet*, 48 P.3d at 524.  But, as we have explained above, that does not end the inquiry.  We must

---

[5] To the extent that Brooks argues that his alcohol and drug problems mitigated the seriousness of his conduct regarding tampering with a witness or victim, we reject the argument because we assume that he was not under the influence of drugs or alcohol while he was in jail pending trial.

also consider the particular facts of these offenses to determine if they were grave or serious. *Hargrove*, ¶ 12.

¶ 59 The underlying facts of the criminal trespass of a motor vehicle conviction were that Brooks broke into a victim's car and stole some property. As for the criminal trespass of a dwelling conviction, the underlying facts were that Brooks took property from a house during a party to which he had been invited. The underlying facts of Brooks' theft from a person conviction were that he distracted a woman by asking for a cigarette, so that another man could steal her purse.

¶ 60 Even if we assume without deciding that the predicate offenses were not grave or serious, that too does not end the matter. Instead, we must consider the triggering and predicate offenses as a whole. *Deroulet*, 48 P.3d at 524-25.

C.    Comparison of Gravity of Crimes to Severity of Punishment

¶ 61 We now compare the gravity of Brooks' offenses as a whole to the severity of his twenty-four-year habitual criminal sentence, giving great deference to the General Assembly's determinations of criminal penalties. *Id.* at 527.

¶ 62    While Brooks' predicate offenses were not per se grave or serious, Brooks' triggering offenses were grave or serious. As the district court explained, Brooks' tampering was a "persuasive and unrelenting campaign to manipulate the cooperation of the victim." The tampering offenses are notable not only for the number of times Brooks tried to influence the victim (the prosecution cited 250 phone calls in its first tampering charge) and the blatantly manipulative nature of the communications, but also for the fact that Brooks could not be dissuaded from tampering with the victim. Brooks continued tampering with the victim after the prosecution charged him with the first count of tampering and his phone privileges were discontinued. As the district court noted, the nature of these offenses demonstrates that Brooks was "uncontrollable in the community and commits crimes and doesn't appear to be able to stop committing crimes."

¶ 63    Further, "it is appropriate for the court conducting the proportionality review to consider" aggravating or mitigating information about the defendant. *People v. Austin*, 799 P.2d 408, 413 (Colo. App. 1990). We recognize that Brooks was acquitted of several felony charges but also note that he was convicted of the

lesser included misdemeanor offenses of two counts of assault in the third degree against his pregnant girlfriend, two counts of third degree assault against a peace officer, and resisting arrest. All of these crimes involved violence. Following *Austin*, we consider Brooks' conduct underlying these misdemeanor convictions in determining whether the sentence imposed was grossly disproportionate. Considering all of the convictions and the underlying circumstances as a whole, we agree with the district court that Brooks' twenty-four-year mandatory sentence was not grossly disproportionate.[6]

## VI.    Conclusion

¶ 64    The judgment of conviction and sentence are affirmed.

JUDGE DAILEY and JUDGE J. JONES concur.

---

[6] In addition to the offenses discussed above, the district court considered Brooks' separate felony conviction for contributing to the delinquency of a minor, which was entered after his conviction under the habitual criminal statute. The contributing to the delinquency of a minor conviction was based on events that predated the triggering offenses, but the judgment of conviction was not entered until Brooks was sentenced under the habitual criminal statute. Therefore, this conviction could not have served as a predicate offense (and indeed, it was not pleaded as such). *People v. Loyas*, 259 P.3d 505, 512 (Colo. App. 2010). Whether erroneous or not, the district court's consideration of this conviction does not alter our analysis or conclusion.