2015 CO 71

**Jarrod Ralph RUTTER, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 13SC523**

Supreme Court of Colorado.

December 21, 2015

Rehearing Denied January 11, 2016

Attorneys for Petitioner: Samler & Whitson, P.C., Eric A. Samler, Denver, Colorado.

Attorneys for Respondent: Cynthia H. Coffman, Attorney General, Carmen Moraleda, Assistant Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, Colorado.

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶1 We granted certiorari to determine whether a court should consider legislative changes when conducting an abbreviated proportionality review of a habitual criminal

sentence.[1] The defendant, Jarrod Ralph Rutter, was convicted of two class 2 felonies for manufacturing methamphetamine and possessing one or more chemicals with intent to manufacture methamphetamine, one class 4 felony for possessing methamphetamine, and a petty offense for possessing drug paraphernalia. The court also adjudicated Rutter a habitual criminal because he had three prior felony convictions for use, possession, and possession with intent to distribute methamphetamine. Because the court adjudicated Rutter a habitual criminal, it was required to quadruple the maximum presumptive range for the class 2 felony convictions from twenty-four years to a mandatory sentence of ninety-six years. § 18–1.3–801(2), C.R.S. (2009). Subsequent to Rutter's sentencing, the legislature prospectively reduced the classification of the offenses for use and possession of methamphetamine and amended the habitual criminal statute so that certain drug offenses no longer qualify as underlying felonies in habitual criminal adjudications. The legislature did not, however, reduce the classification of the offense for manufacturing methamphetamine.

[1] ¶ 2 Based on these legislative changes, Rutter challenged on appeal the proportionality of his sentence under the Eighth Amendment. A division of the court of appeals conducted an abbreviated proportionality review, reasoned that the legislative changes were prospective and should not be considered, determined that all of Rutter's predicate and triggering offenses were per se grave and serious, and concluded that his sentence was not grossly disproportionate. *People v. Rutter*, No. 10CA992, slip op. at 19–26, 2013 WL 1352154 (Colo.App. Apr. 4, 2013). We affirm the court of appeals and hold that while the legislature can change the classification of crimes, courts determine whether offenses are grave or serious for purposes of proportionality review. In this case, we do not reach the question of whether courts can consider legislative changes when conducting an abbreviated proportion-

ality review of a habitual criminal sentence because the legislature has made no change, either prospectively or retroactively, with regard to the triggering offense in this case, manufacturing a schedule II controlled substance. Therefore, we are not altering the judicial determination that manufacturing a schedule II controlled substance is a grave or serious crime. Accordingly, we conduct a proportionality review and conclude that the habitual criminal sentence in this case does not give rise to an inference of gross disproportionality. We affirm the judgment of the court of appeals and remand the case to that court with instructions to return the case to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 3 In April 2009 the police arrested Rutter on suspicion of manufacturing methamphetamine. Pursuant to a search warrant, the police searched his home and found items consistent with manufacturing methamphetamine. While Rutter was in jail, he called his fiancée and asked her whether the police had found certain items hidden in his home. The police monitored the call and, based on this information, obtained a second warrant. In the home, the police found and seized additional items consistent with manufacturing methamphetamine.

¶ 4 The People charged Rutter with one count each of (1) manufacturing a schedule II controlled substance, a class 2 felony; (2) possessing chemicals, supplies, or equipment with intent to manufacture a schedule II controlled substance, a class 2 felony; (3) possessing a schedule II controlled substance, a class 4 felony; and (4) possessing drug paraphernalia, a petty offense. Because Rutter had already been convicted of offenses in the same category of crimes as counts one and two, the People charged those two counts as class 2 felonies rather than class 3 felonies. *See* § 18–18–405(2)(a)(I)(B), C.R.S. (2009) (stating that

---

1. We granted certiorari to review the following issue: "Whether a court, when conducting an abbreviated proportionality review of a habitual criminal sentence, can consider the general assembly's subsequent reclassification of a crime

and/or amendment of the habitual criminal statute that made an underlying crime inapplicable for purposes of a habitual criminal adjudication."

class 3 felonies become class 2 felonies if the violation is committed subsequent to a prior conviction).

¶ 5 In addition, the Complaint and Information also charged three habitual criminal counts in violation of parts of section 18–1.3–801, C.R.S. (2009) (as counts five through seven). These counts were based on Rutter's prior convictions for (1) use of a controlled substance, a class 5 felony, which occurred in 2001; (2) possession of two grams or less of a controlled substance, a class 4 felony, which also occurred in 2001; and (3) possession with intent to distribute a controlled substance, a class 2 felony, which occurred in 2003.[2] The controlled substance at issue in the prior offenses was also methamphetamine. Rutter pleaded not guilty on all counts.

¶ 6 At trial, the jury found Rutter guilty of the controlled substance charges. Subsequently, the trial court adjudicated him a habitual criminal.[3]

¶ 7 Pursuant to section 18–1.3–801(2) and the habitual criminal finding, the trial court, at sentencing, quadrupled the maximum sentences for those offenses. See § 18–1.3–801(2)(A), C.R.S. (2009) ("[E]very person convicted in this state of any felony, who has been three times previously convicted ... of a felony ... shall be adjudged an habitual criminal and shall be punished: For the felony offense of which such person is convicted by imprisonment in the department of corrections for a term of *four times the maximum of the presumptive range* pursuant to section 18–1.3–401 for the class of felony of which such person is convicted ...." (emphasis added)). Class 2 felonies carry a maximum sentence of twenty-four years, while Class 4 felonies carry a maximum sentence of

six years. § 18–1.3–401(1)(a)(V)(A), C.R.S. (2009). Thus, in applying the habitual criminal statute, the court sentenced Rutter to ninety-six years for the class 2 felonies and twenty-four years for the class 4 felony. The court ordered the sentences to run concurrently.

¶ 8 Rutter appealed and argued that his sentences were grossly disproportionate and therefore violated the Eighth Amendment's prohibition against cruel and unusual punishment.[4] He asserted that a reviewing court should consider subsequent amendments to the criminal code when determining whether there is an inference of gross disproportionality during an abbreviated proportionality review. In making his arguments, Rutter noted the following legislative changes. First, he argued that the court should consider the legislature's reclassification of use of a schedule II controlled substance from a class 6 felony to a class 2 misdemeanor,[5] and possession of two grams or less of a schedule II controlled substance from a class 4 felony to a class 6 felony. Ch. 259, secs. 2, 4, §§ 18–18–403.5 to –404, 2010 Colo. Sess. Laws, 1162, 1163, 1165. Second, he urged the court to consider that the legislature amended the habitual criminal statute in 2011 to state that convictions for possession of small quantities of schedule II controlled substances (class 6 felonies) no longer qualify as underlying felonies in a habitual criminal adjudication. Ch. 57, sec. 1, § 18–1.3–801(2), 2011 Colo. Sess. Laws 151, 151–52. Rutter argued that these subsequent legislative changes call into question whether his crimes were grave or serious and whether the changes give rise to an inference of gross disproportionality. See *People v. Deroulet*, 48 P.3d 520, 524, 527 (Colo.2002).

---

**2.** The 2003 offense for possession with intent to distribute a controlled substance was Rutter's second offense for that category of crimes. Thus, the People charged him with a class 2 felony under section 18–18–405, C.R.S. (2003).

**3.** On direct appeal, the court of appeals vacated Rutter's conviction and sentence for possessing methamphetamine and merged his class 2 felony convictions and sentences into one conviction and ninety-six-year sentence for manufacturing methamphetamine, possessing methamphetamine with intent to distribute, and possessing one or more chemicals with intent to manufac-

ture methamphetamine under section 18–18–405(1)(a). This determination is not before us on appeal.

**4.** Rutter also appealed on five other issues not before us.

**5.** Previously, in 2003, the legislature changed use of a schedule II controlled substance from a class 5 felony to a class 6 felony. Ch. 424, sec. 2, § 18–18–404(1)(a)(I), 2003 Colo. Sess. Laws 2681, 2681–82.

¶ 9 A majority of the court of appeals panel disagreed with Rutter and held that a remand for an extended proportionality review was unnecessary. *Rutter*, slip op. at 21. The majority reasoned that the legislature did not intend the amendments to change whether the narcotic-related offenses are grave and serious for cases prior to the date of those amendments because (1) the legislation's plain language demonstrates that the legislative changes apply prospectively and (2) the legislature set the new offense date as the relevant time period for determining whether previous offenses should be used as prior felony convictions in habitual offender adjudications. *Id.* at 21–24. Thus, the majority determined that Rutter's "predicate and triggering offenses were all narcotics-related and were therefore per se grave and serious," negating the need for an extended proportionality review. *Id.* at 21.

¶ 10 Judge Graham dissented from this portion of the opinion. He wrote that, although the trial court had discretion to consider Rutter's prior felonies due to their grave and serious nature, "the subsequent reclassification of [Rutter's] possession conviction could have, and should have, been considered in a proportionality review." *Id.* at 36–37 (Graham, J., dissenting). He then stated that if the trial court had considered the reclassification, it would have determined that Rutter's ninety-six-year sentence gave rise to an inference of gross disproportionality, and it would have reduced the sentence. *Id.* at 38.

¶ 11 We granted Rutter's petition for certiorari to review the court of appeals' determination that the legislature's subsequent reclassification of drug crimes and its amendments to the habitual criminal statute did not alter the crimes' status as grave or serious crimes.

## II. Standard of Review

¶ 12 Whether a sentence is constitutionally proportionate is a question of law that we review de novo. *See People v. Mershon*, 874 P.2d 1025, 1035 (Colo.1994).

## III. Analysis

¶ 13 The issue here is whether a court conducting an abbreviated proportionality review can consider the legislature's reclassifications of drug crimes and its amendments to the habitual criminal statute that occur after a defendant is sentenced. We affirm the court of appeals and hold that while the legislature can change the classification of crimes, courts determine whether offenses are grave or serious for purposes of proportionality review. In this case, we do not reach the question of whether courts can consider legislative changes when conducting an abbreviated proportionality review of a habitual criminal sentence because the legislature has made no change, either prospectively or retroactively, with regard to the triggering offense in this case, manufacturing a schedule II controlled substance. Therefore, we are not altering the judicial determination that manufacturing a schedule II controlled substance is a grave or serious crime. Accordingly, we conduct a proportionality review and conclude that the habitual criminal sentence in this case does not give rise to an inference of gross disproportionality. To explain our reasoning, we first examine the United States Supreme Court's principles for determining whether a sentence is constitutionally proportionate. Next, we outline guiding principles specific to Colorado and then apply the facts of this case to those principles.

### A. Eighth Amendment Proportionality Review

¶ 14 The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. As the Supreme Court has stated, the final clause of the Eighth Amendment prohibits "sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Thus, the Eighth Amendment includes a proportionality principle, and this principle applies in both capital and non-capital cases. *Id.* at 290, 103 S.Ct. 3001; *Close v. People*, 48 P.3d 528, 532 (Colo.2002).

¶ 15 The U.S. Supreme Court has articulated three principles to ensure that a defendant's sentence in a non-capital case does not violate the proportionality principle. First, proportionality reviews are not limited to life sentences; proportionality reviews are proper to review sentences of a term of years. *Close*, 48 P.3d at 536 (citing *Hutto v. Davis*, 454 U.S. 370, 377, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (Powell, J., concurring)). Second, the Eighth Amendment's guarantee of proportionality "is a narrow one." *Id.* at 532. It forbids only "extreme sentences that are 'grossly disproportionate,'" *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring) (quoting *Solem*, 463 U.S. at 288, 303, 103 S.Ct. 3001), and "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare," *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Third, reviewing courts need only complete an abbreviated proportionality review. *Close*, 48 P.3d at 536 (citing *Harmelin*, 501 U.S. at 1004–05, 111 S.Ct. 2680). If, and only if, that abbreviated proportionality review gives rise to an inference of gross disproportionality does a reviewing court need to engage in an extended proportionality review. *Id.*

¶ 16 These guiding principles establish that, in conducting proportionality reviews in non-capital cases, courts will rarely conclude that a defendant's sentence is grossly disproportionate. With this in mind, we now turn to those principles specific to Colorado.

### B. Colorado's Guiding Principles for Proportionality Reviews

¶ 17 Our precedent establishes some Colorado-specific principles for proportionality reviews. Each of the following is applicable to this case.

¶ 18 First, an abbreviated proportionality review is sufficient when the crimes supporting a sentence imposed under the habitual criminal statute include grave or serious offenses. *Close*, 48 P.3d at 537 (citing *People v. Gaskins*, 825 P.2d 30, 36 (Colo. 1992)). An abbreviated proportionality review involves scrutinizing two sub-parts in order to determine whether the sentence gives rise to an inference of gross disproportionality: (1) the gravity or seriousness of the offense in relation to (2) the harshness of the sentence imposed. *Id.* at 542 (citing *Harmelin*, 501 U.S. at 1005, 111 S.Ct. 2680; *Gaskins*, 825 P.2d at 36). We defined the two sub-parts of an abbreviated proportionality review as "scrutiny of the offenses in question to determine whether in combination they are so lacking in gravity or seriousness so as to suggest that the sentence is constitutionally disproportionate to the crime, taking into account the defendant's eligibility for parole." *Id.* at 537 (quoting *Gaskins*, 825 P.2d at 36). An extended proportionality review, on the other hand, involves intra- and inter-jurisdictional sentence comparisons. *Id.* at 536 (citing *Harmelin*, 501 U.S. at 1004–05, 111 S.Ct. 2680).

¶ 19 Second, for those crimes determined to be grave or serious in Colorado, courts skip the first sub-part of the abbreviated proportionality review and move directly to the second sub-part. *Id.* at 537. In other words, a court need not make an individualized determination of the gravity or seriousness of the offense concerning the harm to the victim or to society and the culpability of the offender. *Id.* Rather, a court may proceed directly to the second sub-part and scrutinize the harshness of the penalty. *Id.* As we have noted previously, it is "highly likely that the legislatively mandated sentence" will be constitutionally proportionate for grave or serious crimes. *Id.* at 538. "Thus, the ability to proceed to the second sub-part of the abbreviated proportionality review, namely the harshness of the penalty, when a grave or serious crime is involved results in a near-certain upholding of the sentence." *Id.*

¶ 20 Our guiding principles establish that, in conducting abbreviated proportionality reviews when the crime is grave or serious, courts only scrutinize the harshness of the penalty. Also, it is highly likely that the sentence will be proportionate. Now we turn to the facts of this case.

## C. Application

¶ 21 We review de novo the proportionality of Rutter's sentence. *See Mershon,* 874 P.2d at 1035. To start, we note that Rutter's triggering offense of manufacturing a schedule II controlled substance is grave or serious. We then explain that the legislative changes relevant to this case are not retroactive. We conclude by conducting an abbreviated proportionality review and explain that because courts determine which crimes are grave or serious, the subsequent legislative changes do not require us to alter our determination that Rutter's triggering offense is grave or serious. Accordingly, Rutter's sentence did not give rise to an inference of gross disproportionality.

### 1. Rutter's Triggering Offense Was Grave or Serious

██ ¶ 22 Rutter's triggering offense, and the offense on which his habitual criminal sentence is based, was the crime of manufacturing methamphetamine—a schedule II controlled substance. Previously, we determined that manufacturing methamphetamine is grave or serious, and there is no reason for us to alter that determination here. *See Deroulet,* 48 P.3d at 524.

¶ 23 Although it would not have been dispositive in any event, we note that the legislature did not reclassify Rutter's triggering offense of manufacturing methamphetamine; instead, it only lessened the penalties for drug users and possessors, not for drug manufacturers or sellers. *See* Ch. 268, sec. 28, § 16–11.3–103(2.7)(a)(I), 2012 Colo. Sess. Laws 1391, 1403 (stating that these changes are part of sentencing and drug reforms aimed primarily at "users and addicts," and differentiating them from "more serious offenders who are involved in drug distribution, manufacturing, or trafficking").[6] Even in the eyes of the legislature, the nature of manufacturing methamphetamine is un-

changed. Thus, Rutter's triggering offense was outside the purview of the sentencing reforms for drug offenses. The legislative changes to the drug possession and use statutes do not give us cause to reexamine our prior determination that manufacturing methamphetamine is a grave or serious crime. *See Deroulet,* 48 P.3d at 524. Hence, our determination is unchanged and manufacturing methamphetamine remains grave or serious. We now turn to the proportionality of Rutter's sentence to determine whether there is an inference of gross disproportionality.

### 2. Abbreviated Proportionality Review

██ ¶ 24 We conduct an abbreviated proportionality review to determine whether Rutter's ninety-six-year sentence for the grave or serious triggering offense of manufacturing methamphetamine is overly harsh and thus gives rise to an inference of gross disproportionality. As our precedent directs, we conduct the proportionality review by scrutinizing the harshness of Rutter's sentence in relation to the fact that his triggering offense is grave or serious. *Id.*; *Solem,* 463 U.S. at 296 n. 21, 103 S.Ct. 3001 ("[Courts] must focus on the principal felony—the felony that triggers the [enhanced] sentence....").

¶ 25 The U.S. Supreme Court faced a similar question in *Harmelin.* 501 U.S. at 961, 111 S.Ct. 2680 (majority opinion). There, the Supreme Court upheld Harmelin's sentence of life imprisonment for possessing 672 grams of cocaine. *Id.* Here, we find that Rutter's ninety-six-year sentence for manufacturing a schedule II controlled substance is not too harsh in light of the fact that the triggering offense is grave or serious. Therefore, Rutter's sentence is not grossly disproportionate. *See Close,* 48 P.3d at 536 (noting the "very high likelihood that a sentence will be upheld as constitutionally pro-

---

6. We note, also, that the legislative changes upon which Rutter bases his argument are prospective only. *See, e.g., People v. Summers,* 208 P.3d 251, 257 (Colo.2009) ("It is well established in Colorado that when the [legislature] indicates in an effective date clause that a statute shall apply prospectively, courts are bound by that language."); Ch. 259, sec. 27, 2010 Colo. Sess.

Laws at 1177 (reclassifying use and possession of methamphetamine and stating that "[t]he provisions of this act shall apply to offenses committed on or after" August 11, 2010); Ch. 333, sec. 71, 2013 Colo. Sess. Laws 1900, 1943 (reclassifying drug felonies and stating that the change "applies to offenses committed on or after" October 1, 2013).

portionate" when the crime is grave or serious).

## IV. Conclusion

¶ 26 For the foregoing reasons, we affirm the court of appeals and hold that while the legislature can change the classification of crimes, courts determine whether offenses are grave or serious for purposes of proportionality review. In this case, we do not reach the question of whether courts can consider legislative changes when conducting an abbreviated proportionality review of a habitual criminal sentence because the legislature has made no change, either prospectively or retroactively, with regard to the triggering offense in this case, manufacturing a schedule II controlled substance. Therefore, we are not altering the judicial determination that manufacturing a schedule II controlled substance is a grave or serious crime. Accordingly, after conducting a proportionality review, we conclude that the habitual criminal sentence in this case does not give rise to an inference of gross disproportionality. We affirm the judgment of the court of appeals and remand the case to that court with instructions to return the case to the trial court for further proceedings consistent with this opinion.

JUSTICE GABRIEL dissents, and JUSTICE MÁRQUEZ and JUSTICE HOOD join in the dissent.

JUSTICE GABRIEL, dissenting.

¶ 27 We granted certiorari to decide whether a court, when conducting an abbreviated proportionality review of a habitual sentence, can consider the General Assembly's subsequent reclassification of a crime or amendment of the habitual criminal statute that made an underlying crime inapplicable for purposes of a habitual criminal adjudication. The majority, however, chooses not to reach that question, conducts its own proportionality review, and concludes that the habitual criminal sentence in this case does not give rise to an inference of gross disproportionality because Rutter's triggering offense was grave or serious.

¶ 28 Because the division of the court of appeals relied on the subsequently reclassified crimes in concluding that the sentence at issue did not raise an inference of gross disproportionality, and because no party has argued that Rutter's triggering offense alone supports a finding of constitutional proportionality, I do not believe that we can appropriately avoid answering the question on which we granted certiorari. I would thus address that issue, and I would conclude that the legislature's reclassification of two of Rutter's predicate convictions and its amendment of the habitual offender statute under which he was sentenced are relevant considerations in a court's abbreviated proportionality review. Accordingly, I would reverse the division's decision and remand this case for further proceedings. I therefore respectfully dissent.

## I. Procedural Issues

¶ 29 In performing an abbreviated proportionality review and affirming Rutter's sentence, the court of appeals division concluded that *all* of Rutter's predicate and triggering offenses were per se grave and serious. The division's approach was consistent with our oft-repeated view that "[w]hen conducting an abbreviated proportionality review under the habitual criminal statute, a reviewing court must scrutinize the offenses in question to determine 'whether in combination they are so lacking in gravity or seriousness' so as to suggest that the sentence is grossly disproportionate." *People v. Deroulet*, 48 P.3d 520, 524–25 (Colo.2002) (quoting *People v. Gaskins*, 825 P.2d 30, 36 (Colo. 1992)). In reaching its conclusion, however, the division rejected Rutter's contention that by subsequently reclassifying his predicate offenses of use and simple possession of a controlled substance, the General Assembly expressed its judgment that those crimes are not grave and serious.

¶ 30 In these circumstances, I do not believe that it is appropriate to decide this case without addressing the issue on which we granted certiorari. I reach this conclusion for three reasons.

¶ 31 First, Rutter properly raised the issue in the court of appeals and the division ex-

pressly rejected it in reaching its decision. Thus, certiorari was providently granted, and the issue is squarely presented here.

¶ 32 Second, as noted above, our case law has consistently directed courts performing proportionality reviews to scrutinize all of the offenses in question to determine whether in combination they are so lacking in gravity or seriousness as to suggest that the sentence is grossly disproportionate. *Id.* The court of appeals division did that, and in reviewing the division's decision, I believe that we should do so as well.

¶ 33 Third, because no party has argued that Rutter's triggering offense alone supports a finding of constitutional proportionality, I do not believe that Rutter has been given a full and fair opportunity to address that issue. Thus, I respectfully disagree with the majority's decision to rule on that alternative basis.

## II. Consideration of Legislative Changes

¶ 34 Turning, then, to the merits of the issue presented on certiorari, I agree with Judge Graham's dissenting opinion below that a court may properly consider subsequent legislative changes in its abbreviated proportionality review, notwithstanding the fact, relied on by the division majority, that the legislature had provided that those changes are to operate prospectively. I reach this conclusion for three reasons.

¶ 35 First, I perceive no basis for limiting a court's constitutional analysis based solely on the legislature's decision to apply statutory changes prospectively. In my view, whether a statute applies retroactively is a separate and distinct question from whether a defendant's sentence is constitutionally proportionate. As pertinent here, the retroactive or prospective application of the statutory changes at issue relates to the court's determination of Rutter's sentence, not to its constitutional proportionality, and Rutter does not challenge the determination of his sentence (i.e., he is not contending that the 2011 amendment to the habitual criminal statute applies in this case). In contrast, the proportionality principle included in the Eighth Amendment requires a court to determine whether a defendant's sentence was "grossly

disproportionate." *Deroulet,* 48 P.3d at 524. This requires, at a minimum, an abbreviated proportionality review, in which the court compares the gravity of the offense and the harshness of the penalty to discern whether an inference of gross disproportionality is raised. *Id.* at 527.

¶ 36 Second, when a defendant raises an Eighth Amendment challenge on appeal, the reviewing court must perform its own abbreviated proportionality review. *See Deroulet,* 48 P.3d at 524; *see also Gaskins,* 825 P.2d at 37–38 (Colo.1992) ("In the absence of a need for a refined analysis inquiring into the details of the specific offenses or a detailed comparison of sentences imposed for other crimes in this or other jurisdictions, an appellate court is as well positioned as a trial court to conduct a proportionality review. In such circumstances, there is no need or justification for remand."). Accordingly, I agree with the divisions of the court of appeals that have consistently concluded that a court should be able to assess the sentence's proportionality as of the time of the court's review, taking into account all of the pertinent facts and circumstances then existing, including any legislative changes. *See, e.g., People v. Patnode,* 126 P.3d 249, 261 (Colo. App.2005) (noting that the General Assembly's current evaluation of the seriousness of the offense at issue is a factor that a court can consider in determining whether a defendant's sentence was grossly disproportionate); *People v. Anaya,* 894 P.2d 28, 32 (Colo. App.1994) ("[W]hen the General Assembly subsequently amends a criminal sentencing statute, even though the statute is to be applied prospectively, the trial court may properly consider it when determining whether a defendant's sentence was grossly disproportionate.").

¶ 37 Third, in my view, the legislature's reclassifications of use and simple possession of a schedule II controlled substance and its 2011 amendment to the habitual criminal statute, which established that those offenses could not serve as habitual offender predicates, indicate the legislature's determination that use and simple possession are not per se grave or serious, contrary to our precedent. *See Deroulet,* 48 P.3d at 524 (noting that

narcotics-related crimes are per se grave or serious for purposes of proportionality review); *see also People v. Hargrove*, 2013 COA 165, ¶ 28, 338 P.3d 413, 419 (noting that the 2011 amendment to the habitual criminal statute, which provided that the pertinent habitual sentencing provision would no longer apply to a class 6 felony for possession of a schedule I or II controlled substance, called into question the applicability to class six felony possession convictions of case law finding narcotics-related crimes to be per se grave or serious); *Patnode*, 126 P.3d at 261 (noting that the General Assembly's reduction of an offense from a felony to a misdemeanor indicated its conclusion that the offense was not grave and serious).

¶ 38 For these reasons, I would conclude that a court, when conducting an abbreviated proportionality review of a habitual sentence, *can* consider the General Assembly's subsequent reclassification of a crime or amendment of the habitual criminal statute that made an underlying crime inapplicable for purposes of a habitual criminal adjudication. Indeed, such consideration seems especially appropriate when, as here, the legislative changes would dramatically alter a defendant's sentence. (A person convicted today of the same crimes as Rutter would not be subject to habitual sentencing under section 18–1.3–801(2)(a)(I)(A), C.R.S. (2015), and would face a maximum sentence of twenty-four years, in contrast to the ninety-six-year sentence that Rutter received.)

### III. Application

¶ 39 We have observed that in almost every case, an abbreviated proportionality review will result in a finding that the sentence is constitutionally proportionate. *See, e.g., Deroulet*, 48 P.3d at 526. This is particularly true when a defendant's underlying crimes were grave or serious. *See Close v. People*, 48 P.3d 528, 536 (Colo.2002) ("Defining certain crimes as grave or serious results in a very high likelihood that a sentence will be upheld as constitutionally proportionate, thereby usually eliminating the need for an extended proportionality review in circumstances involving grave or serious crimes as carved out and defined in our precedent.").

¶ 40 In contrast, we have said that when a defendant's crimes are not inherently or per se grave or serious, then a court must conduct "a more extensive review in which it considers additional evidence relevant to constitutional proportionality, such as the facts underlying the defendant's offenses or explicit intra- and inter-jurisdictional comparisons." *People v. Mershon*, 874 P.2d 1025, 1031 (Colo.1994).

¶ 41 And as noted above, we have stated that when conducting an abbreviated proportionality review under the habitual criminal statute, a reviewing court must scrutinize the offenses in question to determine whether, in combination, they are so lacking in gravity or seriousness as to suggest that the sentence is grossly disproportionate. *Deroulet*, 48 P.3d at 524–25; *see also Hargrove*, ¶ 28, 338 P.3d at 419–20 (noting that a court could factor in the amount of narcotics involved in a simple possession conviction in evaluating whether a defendant's triggering and predicate convictions, in combination, were so lacking in gravity or seriousness as to suggest that the sentence was grossly disproportionate).

¶ 42 Here, it is undisputed that Rutter's triggering offense and his prior conviction for possession with intent to distribute a controlled substance are per se grave or serious offenses. *See Deroulet*, 48 P.3d at 524 (noting that certain crimes are per se grave or serious for purposes of proportionality review). Based on the General Assembly's subsequent actions, however, I would conclude that Rutter's prior convictions for use and simple possession of a controlled substance were not per se grave or serious. *See Hargrove*, ¶ 28, 338 P.3d at 419; *Patnode*, 126 P.3d at 261. In addition, I would conclude that the record is not sufficiently developed to allow us to determine whether the facts underlying those convictions rendered those crimes grave or serious.

¶ 43 In these circumstances, and because a court conducting an abbreviated proportionality review under the habitual criminal statute must scrutinize *all* of a defendant's offenses "in combination," *see Deroulet*, 48 P.3d at 524–25, I would remand this case to the court of appeals with instructions to remand the case to the trial court for a new

abbreviated proportionality review. This would allow the trial court to consider both the legislative changes at issue and the facts underlying those offenses that were not per se grave or serious, so that the court could conduct the inquiry mandated by *Deroulet*, 48 P.3d at 524–25. *See Mershon*, 874 P.2d at 1031; *see also Gaskins*, 825 P.2d at 38 n. 13 ("The trial court is in the best position to evaluate ... the extensiveness of the factual inquiries necessary to make a fully informed and legally sound proportionality determination."); *Hargrove*, ¶¶ 15–33, 338 P.3d at 417–21 (reversing and remanding a defendant's sentence to the trial court to engage in further factual development and to conduct a new abbreviated proportionality review).

### IV. Conclusion

¶ 44 For these reasons, I respectfully dissent.

I am authorized to state that JUSTICE MÁRQUEZ and JUSTICE HOOD join in this dissent.