1
 2024 CO 64 Wayne Tc Sellers IV, Petitioner v. The People of the State of Colorado. Respondent No. 22SC738
Supreme Court of Colorado, En Banc
September 30, 2024
 2
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 19CA2033.
 
 3
 
          
 Attorneys for Petitioner: Johnson & Klein, PLLC Gail
 Johnson Boulder, Colorado, Samler and Whitson, P.C. Hollis A.
 Whitson, Denver, Colorado Schelhaas Law LLC Krista A.
 Schelhaas, Littleton, Colorado
 
 
          
 Attorneys for Respondent: Philip J. Weiser, Attorney General
 
 4
 
          Katharine
 Gillespie, Senior Assistant Attorney General Jessica E. Ross,
 Assistant Attorney General Denver, Colorado.
 
 
          
 Attorneys for Amici Curiae American Civil Liberties Union of
 Colorado, Boston University Center for Antiracist Research,
 The Sentencing Project, Sam Cary Bar Association, and
 Colorado-Montana-Wyoming Area Conference of the National
 Association for the Advancement of Colored People: Mintz,
 Levin, Cohn, Ferris, Glovsky, and Popeo, P.C. Matthew D.
 Levitt Evan M. Piercey Elizabeth M. Platonova New York, New
 York Timothy R. Macdonald Anna I. Kurtz Sara R. Neel, Denver,
 Colorado Matthew Segal Boston, Massachusetts, Caitlin Glass
 Boston, Massachusetts.
 
 
          
 Attorneys for Amici Curiae Colorado Criminal and
 Constitutional Law Scholars Justice Marceau and Sam Kamin:
 Killmer, Lane & Newman, LLP Andrew McNulty, Denver,
 Colorado, Andrea Lewis Hartung Chicago, Illinois.
 
 
          
 Attorneys for Amici Curiae Colorado Criminal Defense Bar and
 Office of Alternate Defense Counsel: The Noble Law Firm, LLC
 Tara Jorfald Heidi Tripp Lakewood, Colorado
 
 5
 
          
 Attorneys for Amici Curiae Scholars of Felony Murder and
 Constitutional Proportionality Guyora Binder, Ian Farrell,
 Brenner Fissell, Aya Gruber, Alexandra Harrington, Robert
 Weisberg, and Ekow N. Yankah: Fisher & Byrialsen, PLLC
 Jane Fisher-Byrialsen Denver, Colorado.
 
 
          
 Attorneys for Amicus Curiae Spero Justice Center: Kristen M.
 Nelson Dan M. Meyer Denver, Colorado.
 
 
          
 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER
 joined.
 
 6
 
          
 OPINION
 
 
          
 GABRIEL, JUSTICE.
 
 
          ¶1
 Petitioner Wayne Tc Sellers IV asks us to consider whether a
 life without the possibility of parole ("LWOP")
 sentence for felony murder is categorically unconstitutional
 or, alternatively, grossly disproportionate to the offense of
 felony murder following the General Assembly's 2021
 reclassification of that offense.[1]¶2 Based on objective
 indicia of societal standards and evolving standards of
 decency as expressed in legislative action and state
 practice, as well as the exercise of our independent
 judgment, we now conclude that an LWOP sentence for felony
 murder for an adult offender is not categorically
 unconstitutional.
 
 
          ¶3
 We further conclude that, even assuming without deciding that
 felony murder is not per se grave or serious, Sellers's
 offense here was, in fact, grave and serious. Thus, his LWOP
 sentence, although severe, does not run afoul of the Eighth
 Amendment or article II, section 20 of the Colorado
 Constitution and therefore was not grossly disproportionate.
 
 7
 
          ¶4
 Accordingly, we affirm the judgment of the division below,
 albeit partially on different grounds.
 
 
          I.
 Facts and Procedural History
 
 
          ¶5
 In October 2018, Sellers and several friends planned to rob
 alleged drug dealers at gunpoint. One member of Sellers's
 group arranged to buy acid from O.T., and the two ultimately
 arranged a meeting. At the appointed time and place, the two
 met briefly, and O.T. showed the member of Sellers's
 group the acid. That member then ran off, and four men,
 including Sellers, approached O.T. One of the men flashed a
 gun and grabbed O.T.'s acid and backpack.
 
 
          ¶6
 Sellers and his friends planned to do the same thing to K.H.,
 who was at a different location. Sellers and his friends
 drove to that location, but this interaction tragically
 played out differently. Sellers and one of his friends
 ultimately fired their weapons at K.H., and Sellers's
 friend killed K.H. during the gunfire. After K.H. was shot,
 Sellers and his group left the scene. Sellers was later
 arrested.
 
 
          ¶7
 Sellers was subsequently charged with first degree felony
 murder, aggravated robbery, two counts of conspiracy to
 commit aggravated robbery, three counts of attempted
 aggravated robbery, menacing, and six crime of violence
 counts. The case proceeded to trial in the El Paso County
 District Court.
 
 
          ¶8
 A jury ultimately convicted Sellers on all counts, except for
 one of the conspiracy to commit aggravated robbery counts,
 menacing, and one crime of
 
 8
 
 violence count, which were dismissed. The trial court
 sentenced Sellers to a composite term of LWOP for the felony
 murder plus thirty-two years confinement and five years
 parole for the aggravated robbery conviction.
 
 
          ¶9
 Sellers appealed, arguing, among other things, that under the
 Eighth Amendment to the United States Constitution, an LWOP
 sentence for felony murder is categorically unconstitutional.
 People v. Sellers, 2022 COA 102, ¶¶ 33,
 46, 521 P.3d 1066, 1075, 1077. Alternatively, he contended
 that the division should remand his case for a
 proportionality review of his LWOP sentence. Id. at
 ¶¶ 33, 55, 521 P.3d at 1075, 1078.
 
 
          ¶10
 In a unanimous, published opinion, the division affirmed
 Sellers's conviction and sentence. Id. at ¶
 68, 521 P.3d at 1080. (The division remanded the case to the
 trial court with instructions to impose concurrent sentences
 for Sellers's other convictions, a matter that is not
 before us. Id.) Specifically, the division concluded
 that Sellers's categorical challenge to the
 constitutionality of his LWOP sentence was not applicable in
 this case and that his sentence was constitutionally
 proportional. Id. at ¶ 43, 521 P.3d at 1076.
 
 
          ¶11
 In support of these conclusions, the division noted that at
 the time Sellers committed the crimes at issue, felony murder
 was a class 1 felony that carried a minimum sentence of LWOP.
 Id. at ¶ 44, 521 P.3d at 1077 (citing
 §§ 18-3-102(1)(b) and 18-1.3-401(1)(a), C.R.S.
 (2018)). Although the division acknowledged that in
 
 9
 
 2021, the General Assembly had reclassified felony murder as
 a class 2 felony with a maximum sentence of forty-eight
 years, the division pointed out that the General Assembly
 also provided that its reclassification applied only to
 offenses committed on or after September 15, 2021, the date
 the reclassification took effect. Id. at ¶ 45,
 521 P.3d at 1077 (citing §§ 18-3-103,
 18-1.3-401(1)(a)(V)(A.1), 18-1.3-401(8)(a)(I), C.R.S.
 (2021)).
 
 
          ¶12
 Based largely on this change in the law, Sellers argued that
 an LWOP sentence for felony murder is categorically
 unconstitutional. Id. at ¶ 46, 521 P.3d at
 1077. The division disagreed, however, because Sellers cited
 no case-and the division was aware of none-that had extended
 the categorical approach to cases not involving the death
 penalty or juvenile offenders. Id. at ¶ 54, 521
 P.3d at 1078. Indeed, the division observed that the Supreme
 Court had upheld LWOP sentences for adult offenders even in
 nonhomicide cases. Id. (citing Harmelin v.
 Michigan, 501 U.S. 957 (1991)).
 
 
          ¶13
 Having so concluded, the division went on to consider, and
 reject, Sellers's alternative request to remand the case
 for an abbreviated proportionality review. Id. at
 ¶ 55, 521 P.3d at 1078. Instead, the division conducted
 the review itself and determined that felony murder is a per
 se grave or serious offense (because it necessarily involves
 a violent predicate felony resulting in the death of a
 person) and that, therefore, Sellers's LWOP sentence was
 not grossly disproportionate,
 
 10
 
 despite the subsequent legislative amendments. Id.
 at ¶¶ 55, 65-67, 521 P.3d at 1078-80.
 
 
          ¶14
 Sellers then petitioned for a writ of certiorari in this
 court, and we granted his petition.
 
 
          II.
 Analysis
 
 
          ¶15
 We begin by setting forth the applicable standard of review
 and the basic tenets of the Eighth Amendment and article II,
 section 20 of the Colorado Constitution. We then discuss the
 pertinent case law addressing categorically unconstitutional
 sentences, and, applying that law to the facts before us, we
 conclude that LWOP sentences for felony murder for adult
 offenders are not categorically unconstitutional. Finally, we
 conduct an abbreviated proportionality review of
 Sellers's LWOP sentence for felony murder, and we
 conclude that, on the facts presented, the sentence was not
 grossly disproportionate to the offense.
 
 
          A.
 Standard of Review and the Eighth Amendment
 
 
          ¶16
 We review de novo the constitutionality of statutes.
 People in Int. of T.B., 2021 CO 59, ¶ 25, 489
 P.3d 752, 760. We likewise review de novo whether a sentence
 is grossly disproportionate to the offense, in violation of
 the Eighth Amendment and article II, section 20 of the
 Colorado Constitution. Wells-Yates v. People, 2019
 CO 90M, ¶ 35, 454 P.3d 191, 204.
 
 11
 
          ¶17
 The Eighth Amendment and article II, section 20 of the
 Colorado Constitution are identical and provide,
 "Excessive bail shall not be required, nor excessive
 fines imposed, nor cruel and unusual punishments
 inflicted." U.S. Const. amend. VIII; Colo. Const. art.
 II, § 20. To decide whether a punishment is cruel and
 unusual, "courts must look beyond historical conceptions
 to 'the evolving standards of decency that mark the
 progress of a maturing society.'" Graham v.
 Florida, 560 U.S. 48, 58 (2010) (quoting Estelle v.
 Gamble, 429 U.S. 97, 102 (1976)). This prohibition
 "guarantees individuals the right not to be subjected to
 excessive sanctions." Miller v. Alabama, 567
 U.S. 460, 469 (2012) (quoting Roper v. Simmons, 543
 U.S. 551, 560 (2005)). This right stems from the concept that
 punishment for a crime should be proportionate to both the
 offender and the offense. Miller, 567 U.S. at 469.
 
 
          ¶18
 Supreme Court case law addressing the proportionality of
 sentences falls within two general categories: (1) cases in
 which the Court implements the proportionality standard
 through categorical restrictions and (2) cases in which the
 Court considers all of the circumstances of the case to
 determine whether the length of a term-of-years sentence is
 unconstitutionally excessive or grossly disproportionate to
 the offender or the offense. Graham, 560 U.S. at 59.
 Sellers argues that we should vacate his LWOP sentence under
 both or either of these
 
 12
 
 categories and remand his case for resentencing. We consider
 his contentions in turn.
 
 
          B.
 Categorical Unconstitutionality
 
 
          ¶19
 Sellers first contends that an LWOP sentence for felony
 murder is categorically unconstitutional in light of the
 General Assembly's 2021 reclassification of felony murder
 from a class 1 felony with a mandatory LWOP sentence to a
 class 2 felony with a maximum sentence of forty-eight years.
 In Sellers's view, the General Assembly's
 reclassification of felony murder as a class 2 felony shows
 that standards of decency have evolved in Colorado to the
 extent that its citizens will no longer tolerate punishing
 felony murder offenders with the most severe sentence
 available under state law. We are unpersuaded.
 
 
          ¶20
 In determining whether a sentence is categorically
 unconstitutional, the Supreme Court has first considered
 "'objective indicia of society's standards, as
 expressed in legislative enactments and state practice'
 to determine whether there is a national consensus against
 the sentencing practice at issue." Graham, 560
 U.S. at 61 (quoting Roper, 543 U.S. at 563). In this
 regard, the Court has observed that the "clearest and
 most reliable objective evidence of contemporary values is
 the legislation enacted by the country's
 legislatures." Id. at 62 (quoting Atkins v.
 Virginia, 536 U.S. 304, 312 (2002)). The Court has,
 however, recognized measures of consensus beyond just
 legislation. Id. For example, the Court has noted
 that
 
 13
 
 actual sentencing practices are also important in the
 Court's inquiry into consensus. Id.
 
 
          ¶21
 After considering objective indicia of societal standards,
 the Court has next exercised its independent judgment to
 decide whether the punishment at issue violates the Eighth
 Amendment. Id. at 61. In making this determination,
 the Court has observed that it is to be guided by the
 standards set forth in controlling precedents and also by the
 Court's own understanding and interpretation of the
 Eighth Amendment's text, history, meaning, and purpose.
 Id. This exercise of the Court's independent
 judgment requires consideration of the culpability of
 criminal defendants in light of their crimes and
 characteristics, as well as the severity of the punishment at
 issue. Id. at 67.
 
 
          ¶22
 Prior to Graham, the Supreme Court limited its
 application of the categorical approach to cases involving
 the death penalty. See, e.g., Kennedy v.
 Louisiana, 554 U.S. 407, 413 (2008) (concluding that the
 Eighth Amendment precludes the imposition of the death
 penalty for the rape of a child when the crime did not
 result, and was not intended to result, in the death of the
 victim); Roper, 543 U.S. at 578 (concluding that the
 Eighth and Fourteenth Amendments forbid the imposition of the
 death penalty for offenders who were under the age of
 eighteen when they committed their crimes); Atkins,
 536 U.S. at 321 (prohibiting the
 
 14
 
 imposition of the death penalty for defendants with
 significant intellectual disabilities).
 
 
          ¶23
 In Graham, 560 U.S. at 82, the Court considered for
 the first time whether the categorical approach prohibits an
 LWOP sentence for a juvenile defendant who did not commit
 homicide. The Court concluded that it does. Id.
 
 
          ¶24
 The Court, however, revisited this question two years later
 in Miller, 567 U.S. at 479. Again considering
 whether the Eighth Amendment prohibits the imposition of a
 mandatory LWOP sentence for a juvenile offender, the Court
 this time held that "the Eighth Amendment forbids a
 sentencing scheme that mandates life in prison without
 possibility of parole for juvenile offenders."
 Id. In so concluding, the Court distinguished
 Roper and Graham on the ground that, in the
 case before it, the Court was not categorically barring a
 penalty for either a class of offenses or a type of crime.
 Id. at 483. Rather, the Court's ruling
 "mandate[d] only that a sentencer follow a certain
 process-considering an offender's youth and attendant
 characteristics-before imposing a particular penalty."
 Id.
 
 
          ¶25
 Like the division below, we are unaware of any court that has
 applied the categorical approach to cases not involving
 either the death penalty or juvenile offenders, and Sellers
 cites none. See Sellers, ¶ 54, 521 P.3d at
 1078.
 
 
          ¶26
 Nor have we found a national consensus that a mandatory
 sentence of LWOP for felony murder for an adult offender is
 categorically impermissible. To
 
 15
 
 the contrary, courts in a number of our sister states have
 upheld LWOP sentences for felony murder for adult offenders.
 See, e.g., Sosebee v. State, 893 S.E.2d
 653, 659-60 (Ga. 2023) (concluding that a recidivist
 offender's LWOP sentence for felony murder arising from a
 fatal car accident that occurred while the offender was
 attempting to flee from a police stop was not grossly
 disproportionate to his offenses under the Eighth Amendment);
 Harte v. State, 373 P.3d 98, 101-02 (Nev. 2016)
 (concluding that an LWOP sentence for felony murder, which
 was within the statutory limits, was not so grossly
 disproportionate to the crime as to constitute cruel and
 unusual punishment).
 
 
          ¶27
 To the extent that Sellers cites to decisions that have
 imposed sentences for felony murder that were less severe
 than an LWOP sentence, we note that those cases appear to
 have arisen in states in which the applicable statutes did
 not allow for the imposition of an LWOP sentence for felony
 murder. See, e.g., Todd v. State, 917 P.2d
 674, 679-81 (Alaska 1996) (noting that the maximum sentence
 for felony murder under the applicable state statute was
 ninety-nine years, and concluding that consecutive sentences
 for felony murder and the predicate felony of first degree
 robbery do not violate double jeopardy); State v.
 Reardon, 486 A.2d 112, 120-21 (Me. 1984) (noting that
 the maximum sentence for felony murder was twenty years under
 the applicable state statute, and concluding that a
 fourteen-year sentence for felony murder was not
 disproportionate or cruel and
 
 16
 
 unusual). These cases do not support Sellers's assertion
 that many state courts have concluded that an LWOP sentence
 for felony murder is categorically unconstitutional. The
 cases simply do not address that issue. Nor have we seen
 other cases or authorities supporting Sellers's assertion
 or indicating that a national consensus has arisen (either in
 case law or state statutes) against the imposition of LWOP
 sentences in felony murder cases involving adult offenders.
 
 
          ¶28
 For these reasons, we cannot say that the objective indicia
 of society's standards preclude LWOP sentences in cases
 like this one.
 
 
          ¶29
 Nor does the exercise of our independent judgment lead us to
 conclude that LWOP sentences for felony murder for adult
 offenders are categorically unconstitutional. As noted above,
 the Supreme Court's case law instructs that we must
 exercise our independent judgment to decide whether, in light
 of controlling precedent and our understanding and
 interpretation of the Eighth Amendment's text, history,
 meaning, and purpose, an LWOP sentence for felony murder
 violates the Eighth Amendment. Graham, 560 U.S. at
 61. As part of this analysis, we must consider, among other
 things, "whether the challenged sentencing practice
 serves legitimate penological goals." Id. at
 67. In particular, the Court has indicated that, in
 conducting our analysis, we must assess the four recognized
 goals of penal sanctions, namely, retribution, deterrence,
 incapacitation, and rehabilitation. Id. at 71. We
 therefore proceed to that analysis.
 
 17
 
          ¶30
 Retribution refers to "[p]unishment imposed for a
 serious offense." Retribution, Black's Law
 Dictionary (12th ed. 2024). Retribution is, of course, a
 legitimate reason to punish, but the criminal sentence must
 be directly related to the offender's personal
 culpability. Graham, 560 U.S. at 71.
 
 
          ¶31
 Deterrence has been defined as "[t]he act or process of
 discouraging certain behavior, particularly by fear; esp., as
 a goal of criminal law, the prevention of criminal behavior
 by fear of punishment." Deterrence, Black's
 Law Dictionary (12th ed. 2024). Deterrence is premised on the
 idea that a person will take a possible punishment into
 consideration when making decisions about whether to engage
 in certain behaviors. Graham, 560 U.S. at 72.
 
 
          ¶32
 Incapacitation is "[t]he action of disabling or
 depriving of legal capacity." Incapacitation,
 Black's Law Dictionary (12th ed. 2024). Placing an
 offender in prison incapacitates that offender so that the
 offender cannot commit further crimes (other than in prison
 itself) or endanger public safety. Graham, 560 U.S.
 at 72.
 
 
          ¶33
 Finally, rehabilitation has been defined as "[t]he
 process of seeking to improve a criminal's character and
 outlook so that he or she can function in society without
 committing other crimes." Rehabilitation,
 Black's Law Dictionary (12th ed. 2024). Rehabilitation is
 "a penological goal that forms the basis of parole
 systems." Graham, 560 U.S. at 73.
 
 18
 
          ¶34
 As Sellers asserts, one can reasonably argue that his LWOP
 sentence did not serve all four of these goals. Specifically,
 although an LWOP sentence for committing a felony that
 resulted in another's death might well serve the purposes
 of retribution, deterrence, and incapacitation, it arguably
 does not serve the goal of rehabilitation because a person
 who receives an LWOP sentence is given no opportunity to
 rehabilitate themselves and reenter the community.
 
 
          ¶35
 We cannot say, however, that the fact that an LWOP sentence
 for felony murder might not satisfy one (or even more than
 one) of the above-described penological goals necessarily
 overrides the lack of a national consensus discussed above.
 Cf. Harmelin, 501 U.S. at 999 (Kennedy, J,
 concurring in part and concurring in the judgment) (noting
 that "the Eighth Amendment does not mandate adoption of
 any one penological theory" and that federal and state
 courts "have accorded different weights at different
 times to the penological goals of retribution, deterrence,
 incapacitation, and rehabilitation"). Specifically,
 absent a consensus among states that an LWOP sentence for
 felony murder for an adult offender is always inappropriate,
 we perceive no basis for overriding the law in effect at the
 time Sellers committed the offenses that mandated an LWOP
 sentence for felony murder or the clear legislative
 declaration applying the reclassification of LWOP only to
 offenses committed after September 15, 2021.
 
 19
 
          ¶36
 We are not persuaded otherwise by Sellers's request that,
 notwithstanding the above-described case law construing the
 Eighth Amendment, we should interpret the Colorado
 Constitution to render an LWOP sentence for felony murder
 committed prior to September 15, 2021 categorically improper.
 To be sure, "we are free to construe the Colorado
 Constitution to afford greater protections than those
 recognized by the United States Constitution."
 Millis v. Bd. of Cnty. Comm'rs, 626 P.2d 652,
 657 (Colo. 1981). To date, however, we have not interpreted
 article II, section 20 of our constitution to provide greater
 protection than the Eighth Amendment. Nor have we interpreted
 article II, section 20 to conclude that an adult's LWOP
 sentence for felony murder is categorically unconstitutional.
 And considering the unambiguous statutory language mandating
 an LWOP sentence for felony murder committed before September
 15, 2021, we are not persuaded that we should do so now.
 
 
          ¶37
 Accordingly, we conclude that under the Eighth Amendment and
 article II, section 20 of the Colorado Constitution,
 Sellers's LWOP sentence for felony murder is not
 categorically unconstitutional, and we proceed to consider
 whether that sentence is nonetheless grossly disproportionate
 to the offense in this case.
 
 20
 
          C.
 Gross Disproportionality
 
 
          ¶38
 Sellers argues that his LWOP sentence is grossly
 disproportionate to the offense of felony murder, especially
 in light of the General Assembly's 2021 reclassification
 of felony murder. Again, we are unpersuaded.
 
 
          ¶39
 "The Eighth Amendment does not require strict
 proportionality between crime and sentence. Rather, it
 forbids only extreme sentences that are 'grossly
 disproportionate' to the crime." Harmelin,
 501 U.S. at 1001 (Kennedy, J., concurring in part and
 concurring in the judgment) (quoting Solem v. Helm,
 463 U.S. 277, 288 (1983)); accord Rutter v. People,
 2015 CO 71, ¶ 15, 363 P.3d 183, 188.
 
 
          ¶40
 "Outside the context of capital punishment, successful
 challenges to the proportionality of particular sentences
 have been exceedingly rare." Rummel v. Estelle,
 445 U.S. 263, 272 (1980). Thus, we have said, "[I]n
 conducting proportionality reviews in non-capital cases,
 courts will rarely conclude that a defendant's sentence
 is grossly disproportionate." Rutter, ¶
 16, 363 P.3d at 188.
 
 
          ¶41
 In general, the fixing of prison sentences for specific
 crimes is properly within the legislature's province and
 not that of the courts. Harmelin, 501 U.S. at 998
 (Kennedy, J., concurring in part and concurring in the
 judgment). Indeed, it is well settled that the legislature
 may properly define criminal punishments without providing
 the court with any sentencing discretion. Id. at
 1006. Reviewing courts should thus grant "substantial
 deference to the broad authority
 
 21
 
 that legislatures necessarily possess in determining the
 types and limits of punishments for crimes, as well as to the
 discretion that trial courts possess in sentencing convicted
 criminals." Solem, 463 U.S. at 290.
 
 
          ¶42
 As noted above, when the General Assembly reclassified felony
 murder, it expressly stated that its reclassification applies
 only to offenses committed after September 15, 2021, the date
 the reclassification became effective. This was nearly three
 years after the events in October 2018 that led to
 Sellers's felony murder conviction. "It is well
 established in Colorado that when the General Assembly
 indicates in an effective date clause that a statute shall
 apply prospectively, courts are bound by that language."
 People v. Summers, 208 P.3d 251, 257 (Colo. 2009).
 Accordingly, on its face, the legislative reclassification
 does not invalidate Sellers's LWOP sentence for felony
 murder.
 
 
          ¶43
 Nonetheless, we must still examine whether Sellers's
 sentence was constitutionally disproportionate. See
 Wells-Yates, ¶ 48, 454 P.3d at 206 ("Whether
 statutory revisions apply retroactively 'is a separate
 and distinct question from whether a defendant's sentence
 is constitutionally proportionate.'") (quoting
 Rutter, ¶ 35, 363 P.3d at 191) (Gabriel, J.,
 dissenting)); see also Rutter, ¶ 2, 363 P.3d at
 185 (noting that even though "the legislature can change
 the classification of crimes, courts determine whether
 offenses are grave or serious for purposes of proportionality
 review").
 
 22
 
          ¶44
 In Solem, 463 U.S. at 290-92, the Supreme Court
 adopted a test to determine whether a sentence is
 proportionate to the crime for which the defendant was
 convicted. Although the Court described the test as having
 three steps, id., we have construed it as having
 two, with the first step being comprised of two parts,
 Wells-Yates, ¶ 7 & n.4, 454 P.3d at 196-97
 & n.4. First, the trial court should consider (a) the
 gravity or seriousness of the offense along with (b) the
 harshness of the penalty. Id. at ¶ 7, 454 P.3d
 at 197. Second, the court may compare the defendant's
 sentence to sentences for other crimes in the same
 jurisdiction and to sentences for the same crime committed in
 other jurisdictions. Id. We refer to the first step
 as an "abbreviated proportionality review" and to
 the second step as an "extended proportionality
 review." Id. at ¶ 10, 454 P.3d at 197.
 
 
          ¶45
 When defendants challenge their sentences on proportionality
 grounds, reviewing courts in Colorado must complete an
 abbreviated proportionality review. Id. at ¶
 15, 454 P.3d at 198-99. Courts should conduct an extended
 proportionality review only when the abbreviated
 proportionality review gives rise to an inference of gross
 disproportionality. Id.
 
 
          ¶46
 We have acknowledged that the first part of the abbreviated
 proportionality review-the determination of the gravity or
 seriousness of the offense-is "somewhat imprecise."
 Id. at ¶ 12, 454 P.3d at 198 (quoting
 People v. Gaskins, 825 P.2d 30, 36 (Colo. 1992)).
 Nonetheless, we have considered several factors in
 
 23
 
 conducting this review, including (1) the harm caused or
 threatened to the victim or society; (2) the magnitude of the
 crime; (3) whether the crime is a lesser-included or the
 greater-inclusive offense; (4) whether the crime involved an
 attempt to commit an act or a completed act; and (5) whether
 the defendant was a principal in or accessory to the crime.
 Id. We have also weighed factors relevant to the
 defendant's culpability, such as motive and whether the
 defendant's acts were negligent, reckless, knowing,
 intentional, or malicious. Id.
 
 
          ¶47
 Pertinent here, we further examined in Wells-Yates,
 ¶¶ 40-53, 454 P.3d at 204-07, whether, in the
 course of conducting an abbreviated proportionality review, a
 court should consider statutory amendments enacted after the
 triggering offenses. On this point, we concluded that when
 determining the gravity or seriousness of an offense during
 an abbreviated proportionality review, "the trial court
 should consider relevant legislative amendments enacted after
 the date of the offense, even if the amendments do not apply
 retroactively." Id. at ¶ 45, 454 P.3d at
 206. This is because such legislative enactments might inform
 our evaluation of the gravity or seriousness of the offense.
 Id. at ¶ 52, 454 P.3d at 207.
 
 
          ¶48
 Lastly, we have identified certain crimes as per se grave or
 serious. Id. at ¶ 13, 454 P.3d at 198. For
 example, we have concluded that per se grave or serious
 crimes include aggravated robbery, robbery, burglary,
 accessory to first degree murder, and narcotics-related
 crimes. Id. When a crime is per se grave or serious,
 
 24
 
 a sentencing court may skip the determination regarding the
 gravity or seriousness of the offense and proceed directly to
 assess the harshness of the penalty. Id.
 
 
          ¶49
 Here, we begin by noting that we have never determined
 whether felony murder is a per se grave or serious offense.
 Unlike the division below, however, we perceive no need to
 decide whether it is because even assuming without deciding
 that it is not per se grave or serious, the application of
 the above-described factors to this case establish that
 Sellers's offense was, in fact, grave and serious.
 
 
          ¶50
 In this case, the victim died in the course of an aggravated
 robbery that sellers helped plan and carry out. Moreover,
 although Sellers did not personally kill the victim, he fired
 his weapon at the victim and was an active and willing
 participant in the events resulting in the victim's
 death. Considering all of these factors, and taking into
 account the legislative reclassification that was enacted
 several years after Sellers committed the crimes at issue, we
 conclude that Sellers's offense was, in fact, grave and
 serious.
 
 
          ¶51
 Turning, then, to the harshness of the penalty, we must
 consider whether a sentence is parole eligible because parole
 can reduce the length of confinement, thereby rendering the
 penalty less harsh. Id. at ¶ 14, 454 P.3d at
 198. In addition, we must consider the offense at issue, as
 well as the underlying offenses, to
 
 25
 
 determine whether, in combination, they so lack in gravity
 and seriousness as to suggest that the sentence is
 "unconstitutionally disproportionate to the crime,
 taking into account the defendant's eligibility for
 parole." Id. at ¶ 23, 454 P.3d at 201.
 
 
          ¶52
 Here, Sellers's LWOP sentence renders him ineligible for
 parole and thus ensures that he will spend the rest of his
 life in prison. We recognize, as we must, that such a
 sentence is the harshest sentence that Colorado law currently
 authorizes. § 18-1.3-401(1)(a)(V)(F), C.R.S. (2024).
 Nonetheless, the Supreme Court has concluded that sentencing
 certain defendants who have committed felonies to LWOP does
 not necessarily run afoul of the Eighth Amendment. See
 Harmelin, 501 U.S. at 994-96 (concluding that an LWOP
 sentence for possessing a large amount of cocaine was not
 cruel and unusual).
 
 
          ¶53
 In light of this case law, and considering the
 above-described facts and circumstances of this case, we
 cannot say that Sellers's LWOP sentence is one of the
 rare cases requiring us to conclude that the sentence is
 unconstitutional or grossly disproportionate to the crime
 that he committed. See Rutter, ¶¶ 16, 25,
 363 P.3d at 188-89 (noting that courts in non-homicide cases
 will rarely find a defendant's sentence to be grossly
 disproportionate, and concluding, on the facts presented,
 that the defendant's ninety-six year drug sentence was
 not grossly disproportionate to his crime). Nor, for the
 reasons set forth above, do we perceive
 
 26
 
 a basis to afford Sellers greater protection under the
 Colorado Constitution on the question of gross
 disproportionality than is afforded under the Eighth
 Amendment.
 
 
          ¶54
 In light of this determination, we need not proceed to an
 extended proportionality review.
 
 
          III.
 Conclusion
 
 
          ¶55
 For the foregoing reasons, we conclude that an LWOP sentence
 for felony murder for an adult offender is not categorically
 unconstitutional, nor was that sentence grossly
 disproportionate on the facts of this case.
 
 
          ¶56
 Accordingly, we conclude that Sellers's LWOP sentence for
 felony murder was constitutional, and we affirm the judgment
 of the division below, albeit partially on different grounds.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Specifically, we granted certiorari to
 review the following issues:
 
 
 1. Whether a life without the possibility of parole
 sentence for felony murder is categorically unconstitutional
 following the Colorado General Assembly's
 reclassification of that offense.
 
 
 2. Whether a life without the possibility of parole
 sentence is grossly disproportionate to the offense of felony
 murder following the Colorado General Assembly's
 reclassification of that offense.
 
 
 ---------