22CA0906 Peo v Bishop 10-31-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0906
El Paso County District Court No. 20CR1772
Honorable Marcus S. Henson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Randy Ray Bishop,

Defendant-Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Navarro and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

---

Philip J. Weiser, Attorney General, Megan C. Rasband, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robin M. Lerg, Alternate Defense Counsel, Montrose, Colorado, for Defendant-
Appellant

¶ 1    A jury convicted defendant, Randy Ray Bishop, of first degree felony murder in the course of an attempted burglary and an attempted robbery, possession of a weapon by a previous offender, and two crime of violence sentence enhancers. He appeals only his felony murder conviction and sentence. We affirm and remand for correction of the mittimus.

## I.    Background

¶ 2    The victim was living in a tent in a field with a woman named T.S. One day in 2019, the victim allegedly assaulted T.S., leading to her hospitalization. After the assault, T.S. asked Catherine Sanford, her former daughter-in-law, to retrieve her personal belongings from the tent. Sanford agreed and eventually recruited two men — one of whom was Bishop — to help get T.S.'s belongings.

¶ 3    While driving to the field where the victim and T.S. had encamped, the three smoked methamphetamine. Once there, Bishop and the other man searched for the victim's tent while Sanford waited in the car. But after the other man became "dope sick" from substance use, Sanford and Bishop drove him home.

¶ 4     After dropping him off, Sanford told Bishop she could get T.S.'s belongings the next day, but Bishop demanded that Sanford drive him back to the encampment. The two drove back to the field and smoked more methamphetamine on the way. While Sanford again waited in the car, Bishop texted Sanford that he thought he'd found the victim's tent. Shortly after the text, Sanford heard a scream followed by three gunshots, then another scream followed by four more gunshots. When Bishop returned, he said he'd found the victim's tent, shot at the victim seven times, and thought four shots hit the victim. Bishop instructed Sanford not to give the police his real name and threatened to kill Sanford and her family if she "said anything." He also told Sanford that the way to "get away with murder" was to "do it by yourself" with "[n]o witnesses."

¶ 5     Later, during a police interview, Bishop admitted that he shot the victim but said he acted in self-defense. Bishop explained that he knocked on the victim's tent and called out the victim's name. Without express permission, Bishop started to enter the tent to retrieve T.S.'s belongings. He said that the victim then came out of the tent and attacked him, at which point Bishop fired a warning shot. When the victim didn't back off, Bishop shot him.

2

¶ 6    The prosecution charged Bishop with first degree murder after deliberation, first degree felony murder in the course of an attempted burglary and an attempted robbery, possession of a weapon by a previous offender, two crime of violence sentence enhancers, and two habitual criminal counts.

¶ 7    At trial, Bishop defended on the theory that he acted in self-defense. The jury acquitted Bishop of first degree murder after deliberation but otherwise convicted him as charged.[1] The trial court sentenced Bishop to a controlling sentence of life in prison without the possibility of parole.

II.    Response to Jury Question

¶ 8    Bishop contends that the trial court inadequately responded to a jury question during deliberations.

A.    Additional Background

¶ 9    At the close of evidence, the court instructed the jury, among other things, on the crimes charged and relevant definitions. As important here, the court instructed the jury as follows:

Instruction No. 14

---

[1] The prosecution later dismissed the two habitual criminal counts.

A person "enters unlawfully" or "remains unlawfully" in or upon premises when the person is not licensed, invited, or otherwise privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises that are at the time open to the public does so with license and privilege unless the person defies a lawful order not to enter or remain, personally communicated to him by the owner of the premises or some other authorized person . . . .

## Instruction No. 20

The elements of the Crime of Murder in the First Degree (Felony Murder) are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. acting alone or with one or more persons,

4. committed or attempted to commit Robbery or Burglary, and

5. in the course of or in furtherance of the crime of Robbery or Burglary that he was committing or attempting to commit, or in the immediate flight therefrom,

6. the death of a person, other than one of the participants, was caused by anyone.

## Instruction No. 21

The elements of the crime of Robbery are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. took anything of value,

5. from the person or presence of another,

6. by the use of force, threats, or intimidation.

## Instruction No. 22

The elements of the crime of Criminal Attempt to Commit Robbery are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. engaged in conduct constituting a substantial step toward the commission of Robbery, as defined by Instruction 21.

## Instruction No. 23

The elements of the crime of Second Degree Burglary are:

1. That the defendant,

2. in the state of Colorado, at or about the date and placed charged,

3. knowingly,

> 4. broke an entrance into, entered unlawfully
> in, or remained unlawfully after a lawful or
> unlawful entry in,
>
> 5. a building, occupied structure, or dwelling
>
> 6. with intent to commit therein the crime of
> Assault, as defined by Instruction 25 against
> another person.[2]

¶ 10     So only the robbery and attempted robbery charges asked the jury to determine whether Bishop took (or attempted to take) "anything of value."

¶ 11     During deliberations, the jury asked the following question:

> In our understanding under the law, if [T.S.]
> asks [Sanford] who asks [Bishop] to retrieve
> her belongings, this would be illegal for
> [Bishop] to take [T.S.'s] belongings from the
> tent.  Is our understanding correct?

The jury didn't identify which law or instruction, if any, it was asking about.

¶ 12     The trial court first asked for defense counsel's thoughts, and counsel replied that "there needs to be some clarification on that.  It would only be illegal if [Bishop] was taking the item by force." Before getting the prosecution's position, the court stated that it

---

[2] The court also accurately instructed the jury on the elements of attempted burglary and third degree assault.

6

interpreted the jury's question as one "rooted in the definition of a person entering unlawfully or remaining unlawfully" (defined in Instruction No. 14) and thought the jury was trying to figure out whether Sanford was authorized to give Bishop permission to enter the tent. The court said it was inclined to refer the jury back to the original instructions.

¶ 13 The prosecution agreed that referring the jury back to the instructions was appropriate. But defense counsel disagreed, asserting that the jury "may be confused" about whether the act of Bishop entering the tent to take T.S.'s belongings, by itself, was a crime. Defense counsel added that because Bishop was charged with burglary predicated on assault, the jury needed to understand that robbery was the only charge that involved taking T.S.'s property and that "robbery requires a taking of something by force."

¶ 14 The court responded that it wasn't "sure the confusion lies in the same place" defense counsel suggested but asked defense counsel to draft a proposed answer to the jury's question. Counsel then proposed telling the jury that "it is only illegal for [Bishop] to take [T.S.'s] belongings if he is doing so through the use of intimidation or force or threats." After reviewing the original

7

instructions, the court agreed that "there does need to be some clarification as it relates to the retrieval of [T.S.'s] belongings."

¶ 15   After some back and forth about how best to respond, the court ultimately answered the jury's question as follows:

> The issues raised by your question are addressed in instructions #14, #20, #21, and #22.  Specific attention is directed to part 6. of instruction #21.

Recall that Instruction 21 listed the elements for robbery (including that the defendant "took anything of value," "from the person or presence of another") and that part 6 of Instruction 21 specifically required that the taking be "by the use of force, threats, or intimidation."

B.   Legal Principles and Standard of Review

¶ 16   A trial court must instruct the jury correctly on the applicable law.  *People v. Jones*, 2018 COA 112, ¶ 24.  If the jury asks a question during its deliberations, the court should refer the jury to the original instructions "when it is apparent that the jury has overlooked some portion of the instructions or when the instructions clearly answer the jury's inquiry."  *Leonardo v. People*, 728 P.2d 1252, 1255 (Colo. 1986).  But if the jury's question

8

demonstrates that the jury has considered the relevant instruction and has a fundamental misunderstanding, or when the instructions provide no clear answer to the jury's question, the court must clarify the matter for the jury in a concrete and unambiguous manner.  *See id.* at 1255-56.

¶ 17    We review a trial court's response to a jury question for an abuse of discretion.  *People v. Lopez,* 2024 COA 26, ¶ 37.  A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law.  *Id.*

C.    The Trial Court Didn't Abuse its Discretion

¶ 18    Bishop doesn't argue that any of the jury instructions were legally incorrect.  Rather, he says that the trial court erred by referring the jury back to four specific instructions instead of using his proposed response.

¶ 19    As Bishop admits, it's "unclear exactly what the jury was confused about."  But even if we assume — as Bishop speculates — that the jury believed it was illegal for Bishop to take T.S.'s belongings even without force, threats, or intimidation, Bishop doesn't explain why referring the jury back to the identified

instructions, and specifically the elemental instruction for robbery, didn't resolve that confusion.

¶ 20 Read collectively, the four identified instructions correctly stated the law and addressed defense counsel's expressed concern that the jury might not understand that any taking of T.S.'s belongings must involve "the use of force, threats, or intimidation" to be illegal. And because the court specifically directed the jury to the force element of robbery, we don't see much difference between the court's response and defense counsel's proposed response. After all, defense counsel proposed responding that "it is only illegal for [Bishop] to take [T.S.'s] belongings if he is doing so through the use of intimidation or force or threats." But Instruction 21 said as much.[3] *See People v. Chase*, 2013 COA 27, ¶¶ 44-47 (concluding court's response to the jury that referred the jury back to the original instructions was proper and "essentially responded to the jury as [the defendant] requested").

---

[3] While Bishop doesn't specifically address the burglary instruction, to the extent he suggests the jury was confused about whether it could find Bishop guilty of burglary for taking T.S.'s belongings, we disagree. The elemental burglary instruction required a finding that Bishop intended to commit assault. Nothing in the burglary instruction referenced the taking of property.

¶ 21    Because the referenced instructions correctly stated the law and adequately addressed defense counsel's stated concern, we don't agree with Bishop that the court erred by declining to use his precise response.  *See id.*

¶ 22    We therefore conclude that the trial court didn't abuse its discretion by referring the jury back to four specific instructions.

### III.    Life Without Parole Sentence — Proportionality

¶ 23    Next, Bishop contends that the court reversibly erred by sentencing him to life without parole for felony murder because he maintains that the sentence is grossly disproportionate under the United States and Colorado Constitutions.

### A.    Legal Principles and Standard of Review

¶ 24    The United States and Colorado Constitutions prohibit the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII; Colo. Const. art. II, § 20; *People v. Walker*, 2022 COA 15, ¶ 61. This prohibition applies not only to barbaric punishments, but also those that are "disproportionate to the crime committed."  *Solem v. Helm*, 463 U.S. 277, 284 (1983).  But "strict proportionality" isn't required; only a "grossly disproportionate" sentence is unconstitutional.  *Wells-Yates v. People*, 2019 CO 90M, ¶ 5 (quoting

11

*Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)).

¶ 25    To determine whether a sentence is grossly disproportionate, we conduct a two-part analysis. *Walker,* ¶ 62. Under step one, we conduct an abbreviated proportionality review, which has two subparts. *Id.* We assess (1) the gravity or seriousness of the offense and (2) the harshness of the sentence imposed. *Id.*

¶ 26    Regarding the first subpart, certain crimes are considered per se grave or serious. *Id.* at ¶ 63. If a crime is per se grave or serious, we skip the first subpart and jump directly to the second subpart to assess the harshness of the sentence. *Id.* In assessing the sentence's harshness, we consider parole eligibility. *Id.* at ¶ 64.

¶ 27    We only continue to step two — an extended proportionality review — if the abbreviated proportionality review creates an inference of gross disproportionality. *Id.* at ¶ 66. "[A]n abbreviated proportionality review will almost always yield a finding that the sentence is not unconstitutionally disproportionate." *Id.* (quoting *Wells-Yates,* ¶ 21).

¶ 28    We review de novo whether Bishop's sentence was grossly disproportionate. *Id.* at ¶ 54. Because his proportionality claim is

12

unpreserved, we review for plain error. *See id.* at ¶¶ 59-60. To be plain, the error must be obvious, meaning the action challenged on appeal contravened a clear statutory command, a well-settled legal principle, or Colorado case law. *See id.* at ¶ 68.

### B.    Any Error Was Not Plain

¶ 29    Bishop argues his life without parole sentence for felony murder is grossly disproportionate because (1) felony murder is a strict liability offense without a requisite mental state, and (2) after his crime, the legislature reclassified felony murder from a class 1 felony to a class 2 felony.[4]

¶ 30    But we don't reach these specific arguments because, as Bishop acknowledges, his proportionality claim is unpreserved. And Bishop doesn't connect any part of his argument to a plain error analysis — that is, he doesn't point us to any authority that the trial court contravened when it sentenced him. *See id.* Nor could he. That's because when Bishop fatally shot the victim,

---

[4] It's unclear whether Bishop argues that his life without parole sentence raises an *inference* of gross proportionality or whether his sentence is *itself* grossly disproportionate. Though we assume the latter, because we conclude the court didn't plainly err during sentencing, the difference doesn't matter for our purposes.

felony murder was a class 1 felony, *see* § 18-3-102(1)(b), C.R.S. 2019, punishable by a mandatory life without parole sentence, § 18-1.3-401(1)(a)(V)(A.1), C.R.S. 2024. Indeed, the sentencing court recognized it lacked discretion, stating "the required sentence is life without parole." *Cf. People v. Wentling*, 2015 COA 172, ¶ 32 (concluding that an error is not obvious, and thus not plain, when "nothing in our statutes" would have alerted the court to the error) (citation omitted).

¶ 31     And while we recognize that the legislature later reclassified felony murder from a class 1 felony to a class 2 felony, that reclassification was prospective, applying only to crimes committed on or after September 15, 2021. Ch. 58, secs. 2, 6, § 18-3-103, 2021 Colo. Sess. Laws 236, 238. Because the trial court applied the required statutory sentence, we don't see — and Bishop doesn't explain — how the court plainly erred by not sua sponte determining that the statutory amendment rendered his sentence constitutionally disproportionate. *See People v. Summers*, 208 P.3d 251, 257 (Colo. 2009) ("It is well established in Colorado that when the General Assembly indicates in an effective date clause that a

14

statute shall apply prospectively, courts are bound by that language.").

¶ 32     For these reasons, we can't conclude the court plainly erred by applying the law in effect at the time.

### C.     Bishop's Life Without Parole Sentence Is Not Grossly Disproportionate

¶ 33     But even conducting an abbreviated proportionality review, as Bishop requests, *see Walker*, ¶ 66, we conclude that his sentence is not grossly disproportionate.

¶ 34     We start with the first subpart of step one — the gravity or seriousness of Bishop's felony murder offense.  And if the offense is per se grave or serious, we move to the harshness of the sentence. *Id.* at ¶ 63.

¶ 35     The question as to whether felony murder is a per se grave or serious offense was answered while Bishop's appeal was pending. *See People v. Sellers*, 2022 COA 102, ¶¶ 63-65 (*Sellers I*), *aff'd on other grounds*, 2024 CO 64.  In that case, the defendant and some companions robbed a drug dealer.  *Id.* at ¶ 1.  One of the defendant's companions shot and killed the drug dealer.  *Id.*  The defendant was convicted of felony murder.  *Id.*  On appeal, a

15

division of this court held that "[f]elony murder is a per se grave or serious offense because it necessarily involves committing a violent predicate felony that results in the death of a person. Thus, every factual scenario giving rise to a charge of felony murder will be grave or serious." *Id.* at ¶ 65. On certiorari review, our supreme court didn't address that holding, leaving it as precedential authority. *See Sellers v. People*, 2024 CO 64, ¶¶ 1-4 (*Sellers II*).

¶ 36 Recognizing that fact, Bishop simply argues that we aren't bound by *Sellers I*. While true, *see Chavez v. Chavez*, 2020 COA 70, ¶ 13, Bishop provides no compelling reason why we should depart from *Sellers I*. And because we agree with *Sellers I*'s conclusion that felony murder is per se grave and serious, we decline Bishop's invitation to depart from it.

¶ 37 Jumping next to subpart two — the harshness of Bishop's sentence — both *Sellers I* and *Sellers II* agree that a life without parole sentence, while harsh, is not grossly disproportionate to a felony murder offense. *Sellers II*, ¶¶ 51-53; *Sellers I*, ¶ 67. The facts here bear that out. Indeed, Bishop insisted on returning to the victim's encampment in the middle of the night and shot the victim multiple times (including in the back). Given that, "we

cannot say that [Bishop's life without parole] sentence is one of the rare cases requiring us to conclude that the sentence is unconstitutional or grossly disproportionate to the crime that he committed." *Sellers II*, ¶ 53.

¶ 38     Having so concluded, we need not conduct an extended proportionality review (or remand to the trial court to conduct one).

### IV.    Life Without Parole Sentence — Facial Challenges

¶ 39     Bishop also contends that (1) his life without parole sentence is categorically unconstitutional given the legislature's decision to reclassify felony murder from a class 1 felony to a class 2 felony; (2) the prospective-only language of that reclassification is unconstitutional; and (3) we should exercise our independent judgment to conclude that his life without parole sentence is unconstitutional.

¶ 40     But in *Sellers II*, our supreme court largely considered and rejected these arguments.  After assessing the objective indicia of society's standards as well as exercising its independent judgment, the court concluded that a life without parole sentence for felony murder for an adult offender is not categorically unconstitutional under the United States and Colorado Constitutions.  *Id.* at ¶¶ 2,

17

19-37. Further, the court was unphased by the prospective-only language of the legislature's felony murder reclassification. Specifically, the court "perceive[d] no basis for overriding the law in effect at the time [the defendant] committed the offenses that mandated [a life without parole] sentence for felony murder or the clear legislative declaration applying the reclassification of [life without parole] only to offenses committed after September 15, 2021."[5] *Id.* at ¶ 35. And in its proportionality analysis, the court concluded that, "on its face, the legislative reclassification does not invalidate" the defendant's life without parole sentence for felony murder. *Id.* at ¶ 42.

¶ 41     Because we're bound by *Sellers II*, we reject Bishop's claim that his life without parole sentence is unconstitutional.

V.     Mittimus Correction

¶ 42     Finally, though not raised by the parties, we recognize that the mittimus incorrectly states that Bishop pleaded guilty. We

---

[5] We are unaware of any Colorado authority — and Bishop directs us to none — concluding that prospective-only statutory amendments are unconstitutional. For that reason alone, we can't conclude that the trial court plainly erred by not sua sponte considering whether the prospective-only amendments were constitutional.

therefore remand to the trial court to correct the mittimus to reflect the jury's conviction. *See* Crim. P. 36.

## VI.   Disposition

¶ 43     We affirm the judgment and sentence and remand the case to correct the mittimus.

JUDGE NAVARRO and JUDGE GOMEZ concur.